No. 38,499

Jerry E. Driscoll, *Plaintiff*, v. A. W. Hershberger and Lester McCoy, Walter S. Fees, Mrs. Elizabeth Haughey, Willis N. Kelly, Drew McLaughlin, Grover Poole, L. B. Spake and Oscar S. Stauffer, individually and as members of the Board of Regents, and the Board of Regents of the State of Kansas, *Defendants*.

(238 P. 2d 493)

Opinion filed December 8, 1951.

*Harry K. Allen* and *Barton E. Griffith,* both of Topeka, argued the cause, and *Richard M. Driscoll* and *Jerry E. Driscoll,* both of Russell, were with them on the briefs for the plaintiff.

*Harold R. Fatzer,* attorney general, and *J. B. Patterson,* of Wichita, argued the cause, and *L. P. Brooks,* assistant attorney general, was with them on the briefs for the defendants.

The opinion of the court was delivered by

THIELE, J.: This is an original action in quo warranto in which plaintiff Driscoll seeks a determination of the right of defendant Hershberger to hold office as a member of the board of regents, to have Hershberger ousted from the office and to have plaintiff Driscoll declared entitled to and recognized as a member of the board.

In his petition plaintiff alleges that the defendants other than Hershberger constitute the board of regents, which was organized and existing under and by virtue of G. S. 1949, 74-3201 (Laws 1939, ch. 289); that plaintiff was first appointed as a member of the board by Governor Schoeppel on July 17, 1943, for a term expiring December 31, 1945, the appointment being confirmed by the senate of the state of Kansas; that thereafter he was reappointed by Governor Schoeppel as a member of said board on December 31, 1945, for a term expiring December 31, 1949, the appointment being confirmed by the senate; that thereafter and on December 30, 1949, he was again appointed by Governor Carlson as a member of the board for a term of four years expiring December 31, 1953, and a commission therefor was duly issued to him; that appointments as members of the board are, under the above statute, made by the governor with the advice and consent of the senate, and that his appointment on December 30, 1949, was made at a time when the senate was not in session; that by reason of the statute he is entitled to hold his office for a term of four years and until his successor has been appointed and qualified and until the senate has acted thereon, and that it was the duty of the governor to submit plaintiff's appointment by Governor Carlson to the senate for consideration and affirmative action in confirming or rejecting the appointment.

Plaintiff further alleged at length that on March 21, 1951, at the regular session of the legislature Governor Arn submitted to the senate a list of thirty-seven appointees, including some to the board of regents and some to other offices, but included in which was that of "27.  Herb Barr, Leoti (appointed 3-20-51), member of the State Board of Regents for the term expiring December 31, 1953. Vice Jerry E. Driscoll." as disclosed by the journal of the senate. He then directs attention to rule 56 of the senate that nominations

by the governor shall be referred to appropriate committees for report and after report shall be considered in executive session, and alleges that as disclosed by the senate journal on March 22, 1951, the committee to whom the nominations were referred filed its report recommending confirmation; that on March 28, 1951, the senate, in executive session took action, the senate journal being quoted. In substance it shows that the chairman of the committee reported, recommending confirmation of the appointments, but that on motion of Senator Woodward no action was taken on nomination 27. The other nominations were confirmed and the executive session was dissolved. (It is here observed that the applicable statute, hereafter reviewed, uses the words "appoint" and "appointments" and not the words "nominate" and "nominations".)

Plaintiff further alleges that the governor failed to submit and did not submit to the senate for its action, his appointment by Governor Carlson on December 31, 1949; that the governor did submit other nominations but failed to include only that of the plaintiff and by reason of such failure his appointment was never before or considered by the senate and when it adjourned sine die on March 31, 1951, it had taken no action on his appointment, and by reason thereof plaintiff was and is a duly appointed, qualified and acting member of the board of regents and entitled to so act until the senate shall have affirmatively taken action either to confirm or reject his nomination, or until his term expires on December 31, 1953. He further alleged that on April 12, 1951, Governor Arn purported to appoint defendant Hershberger as a member of the board of regents and issued him a purported commission for a purported unexpired term ending December 31, 1953; that for reasons previously set forth there was no vacancy existing and the purported appointment was null and void.

The plaintiff's allegations as to what occurred at the next meeting of the board of regents on April 20, 1951, and subsequent thereto, need not be detailed.

The defendants, except Hershberger, filed an answer containing a qualified general denial and they then alleged facts, as distinguished from conclusions, about as set forth in the petition. They alleged at length that the submission of the Barr appointment brought to the attention of the senate the appointment of plaintiff; that it was unnecessary for the governor to submit plaintiff's name to the senate for the reason it was authorized on its own

initiative and without advice of the governor to investigate concerning recess appointments and to confirm them if it desired and that it did make such investigation and failed to confirm the appointment of plaintiff, and they alleged that in connection with the investigation the journal of the senate needed to be supplemented and they then pleaded at some length various motions made to confirm plaintiff's appointment, which never reached a vote or on vote were not carried. They further answered that the appointment of plaintiff by Governor Carlson on December 30, 1949, was only until the next regular or special session of the legislature; that the senate adjourned sine die on March 31, 1951, without confirming plaintiff's appointment; that a vacancy existed and that any right plaintiff had as a member of the board terminated. They prayed that plaintiff take nothing and that Hershberger be adjudged to be the regularly appointed, qualified and acting member of the board of regents.

Hershberger filed a separate answer which for present purposes may be said to contain, in substance, the same allegations as those of the answer of the other defendants.

Plaintiff filed motions directed against each of these answers that certain allegations be stricken on the ground they were incompetent, irrelevant and immaterial, were conclusions of law and not of fact, constituted redundant and surplusage matter, or stated facts which did not constitute a defense. We shall not detail the allegations attacked. Even though there may be some merit in parts of the motions, those parts need not be pointed out nor a specific ruling made thereon for our decision is not based on the allegations attacked, and specifically, not upon any claimed supplements to the record as disclosed by the journal of the senate.

The cause is submitted to us on a motion of plaintiff for judgment on the pleadings.

As the pleadings disclose, the present controversy involves appointment as a member of the state board of regents, hereafter referred to generally as the board. The board was first created by Laws of 1925, chapter 259, later appearing as G. S. 1935, 74-3201, which provided it was composed of nine members who shall be appointed by the governor, that the terms of those first appointed shall be for specified varying terms and upon the expiration of such terms, succeeding regents shall be appointed for a term of four years and until their successors shall have been appointed and qualified, and in case of vacancy, the governor shall appoint

and fill the vacancy for the unexpired term. We point out that in that statute no provision was made fixing any qualifications of persons to be appointed nor that any appointment was to be made with the advice, confirmation or approval of the senate of the state or any other person, board or authority.

The above statute was amended by Laws 1939, chapter 289, later appearing as G. S. 1949, 74-3201, and it is this statute which is presently involved. This statute provides for a board of regents of nine members to be appointed by the governor "with the advice and consent of the senate" of whom five were to be appointed from one political party and four from another, as specified, and, in general that when the new members have qualified, the terms of the then present members shall be terminated and they shall surrender their offices and all right and authority by virtue of their office to the new members. The statute then continues:

". . . (1) Upon the expiration of the terms of such members first appointed as members of the board of regents created by this act as aforesaid, each succeeding member shall be appointed by the governor with the advice and consent of the senate, and shall hold his office for a term of four years, and until his successor shall have been appointed and qualified. (2) Whenever appointments to the board of regents are made when the senate of the state of Kansas is not in session such appointments shall hold until the senate has acted thereon. (3) If the senate shall fail to approve such appointment, the governor shall make a new appointment to fill out the unexpired term of such member who has failed of confirmation. (4) All vacancies in the board shall be filled by appointment by the governor for the unexpired term subject to confirmation by the senate at the next regular or special session of the legislature. . . ."

The numbers shown do not appear in the statute and are inserted for reference thereto later herein. The remaining part of the statute is not reviewed because not of present importance.

In support of his contention that he is now a member of the board of regents and entitled to a judgment of this court to that effect, plaintiff first directs our attention to facts not in dispute and including that prior to 1949 he had twice been appointed to the board by the then governor and that the appointments had been confirmed, and that he was appointed for a third term on December 30, 1949, for a term of four years by the then governor and a commission was issued to him; that the senate was not then in session; that at the next and 1951 session of the legislature the then governor did not submit his appointment of December 30, 1949, to the senate for its action thereon and the senate did not, on its own initiative, ever

take any action thereon; that the legislature adjourned March 31, 1951; that thereafter and on April 12, 1951, the governor appointed Hershberger and issued him a commission for the term expiring December 31, 1953.

Plaintiff opens his argument by calling attention to the rule that a statute should be so construed that effect shall be given if possible to every clause and section of it, and that no clause or part of it shall be treated as superfluous. That rule, stated in *Barrett v. Duff*, infra, and cases cited therein, is conceded to be correct. The substance of his argument is that pursuant to his appointment to the board on December 30, 1949, and the commission issued to him, plaintiff entered into the office as a duly appointed and acting member thereof; that under the law his appointment vested in him the right to hold office for the four-year term to which he had been appointed, subject only to his appointment being defeated by a non-concurrence or rejection by the senate; that when he was appointed in December, 1949, by Governor Carlson neither he nor any successor had any control over the appointment until the appointment had been rejected by the senate; that the term of office is fixed by statute and no power of removal exists, and that the governor was powerless to remove him or create a vacancy in the office he held except by a lawful proceeding and for cause. He argues further that when the senate is not in session, the governor has power to make appointments at the end of terms or to fill vacancies, but no power to appoint a successor unless there is such a vacancy, and that the governor has no power to create a vacancy. He also argues that once a governor has made an appointment and issued a commission (when the senate is not in session) neither the governor making the appointment nor his successor, has any right to revoke the appointment, although if the senate later refuses confirmation of the appointment a vacancy would exist. He further contends that under the statute his last appointment "shall hold until the senate has acted thereon;" that the senate did not act thereon; that the phrase quoted means an affirmative action; that there was none, and it may not be said there was any failure of confirmation. After making some comment that it is not the province of the senate to ferret out the names of appointees, particularly where the governor has submitted a list such as was submitted here, he argues that it cannot be contended it was the duty of the senate to initiate such an inquiry; that if there was any dereliction it was when the gov-

ernor failed to transmit a complete list of appointments made by his predecessor without alteration or modification. He does not contend that the statute before us, or any other applicable statute, requires that the incumbent governor submit to the senate for its action appointments made by his predecessor. Plaintiff summarizes his argument thus:

"1. The plaintiff is not only the incumbent in office, but he has been legally appointed at a time when the appointing power had a right to act and his appointment has never been legally rejected, cancelled or revoked by the Kansas State Senate, the only body that had the legal authority to revoke, cancel or reject such appointment.

"2. The purported appointments of Herb Barr and the defendant A. W. Hershberger were made at a time when no vacancy existed, when the appointing power (Governor Carlson) had already acted, and Governor Arn could not then revoke an appointment already made.

"3. The plaintiff as present incumbent does, under the provisions of the statute, hold his office until the expiration of the term for which he was appointed by Governor Carlson on December 30, 1949, unless rejected by the Senate at some special or regular session of that Body."

In support of his main contentions, plaintiff relies on our decisions in *Barrett v. Duff*, 114 Kan. 220, 217 Pac. 918, and *The State, ex rel., v. Matassarin*, 114 Kan. 244, 217 Pac. 930, both decided in July, 1923. Our attention is also directed to *State, ex rel., McCarthy v. Watson*, 132 Conn. 518, 45 Atl. 2d 716. We are of the opinion that the present action is determinable under our own statutes and decisions, and the last case, and other decisions from other jurisdictions, will not be reviewed.

The opinion in *Barrett v. Duff*, supra, decided three separate actions involving three different appointments by the governor. Motter had been appointed state oil inspector for a term of four years, beginning March 31, 1921, and the appointment was confirmed by the senate. Motter resigned and on October 18, 1921, Duff was appointed and commissioned for the unexpired term ending March 31, 1925. On January 27, 1922, Crawford was appointed and commissioned as a judge of the court of industrial relations for a term ending February 1, 1925. On March 20, 1922, Greenleaf was appointed and commissioned as a member of the public utilities commission for a three-year term ending March 18, 1925. Each of the last three appointments was by Governor Allen when the senate was not in session and the appointees entered upon their duties and were acting when Allen's term expired on January 8, 1923. On January 9, 1923, the legislature convened and on January 16, 1923,

the senate adopted a motion to consider recess appointments and the appointments were referred to a committee. Subsequently, but before March 7, 1923, the incoming Governor Davis transmitted to the senate the names of Barrett, Goodrich and Rice for appointment to the positions held by Duff, Crawford and Greenleaf, respectively, and issued to his appointees papers in form and intent to commission them. On March 7, 1923, the senate confirmed the appointment of Duff, Crawford and Greenleaf, and actions in quo warranto to determine title to the three offices were commenced by the appointees of Governor Davis. The court first considered whether the naming and commissioning of the defendants to their respective offices were appointments or nominations, a question not raised in the instant case, but we do note that in connection this court directed attention to the statutory provision that with respect to the office of state oil inspector the governor shall appoint some suitable person "whose term, when confirmed by the senate, shall be for four years from April 1, 1913, and until his successor is appointed and qualified, unless sooner removed by the governor; and he may be removed at any time for cause" (Laws 1913, ch. 200, § 2); that with respect to the court of industrial relations, the judges shall be appointed by the governor "by and with the advice of the senate" and "in case of vacancy in the office of judge . . . the governor shall appoint his successor to fill the vacancy for the unexpired terms" (Laws 1920, ch. 29, § 1) and that with respect to appointments of the public utilities commission, provisions substantially the same as those for the court of industrial relations are made (Laws 1921, ch. 260, § 1). The court said that the governor having the power of appointment and having appointed and commissioned the defendants, they became vested with the powers and prerogatives of their respective offices and the governor was powerless to remove them or to create vacancies in the offices they held except by a lawful proceeding and for cause. It then determined that defendants, having been commissioned and their appointments having been confirmed by the senate, there was a presumption that they, being incumbents and in possession of their offices, had the right to hold them until someone with a better title demanded possession. Directing attention to the fact the statute made no specific provision for filling a vacancy in the office of oil inspector, it was said the law contemplates and dispatch of public business requires that the office be filled and that the executive could fill the

vacancy. It was also said with respect to the board of public utilities and the court of industrial relations that the legislature had made provision for succession in office of the incumbents, requiring terms expiring at different dates so that the membership include at all times men of experience, and that on the expiration of a term of office the governor should appoint, at once, in order that there be no vacancy in office. On the question whether the plaintiffs had shown any legal right to the offices, it was said that the sending of their names to the senate by the governor did not operate to create vacancies; that the power of removal from office was not incidental to the power of appointment and the power to appoint did not arise until there was a vacancy in fact. The court, after stating that the power of the governor having been exercised, he had no further control over the respective offices unless and until the appointees had been rejected by the senate, stated that if Governor Davis had submitted the names of defendants and indicated that he desired they be rejected and that had happened, he could have filled the vacancies. It then considered the contention of plaintiffs, that defendants' names not having been submitted to the senate for approval, the approval by the senate on its own initiative lacked validity. This was denied, it being said that the senate could take legislative notice of the recess appointments by a preceding governor not submitted or transmitted to them by the incumbent governor. The judgment of the court was in favor of the defendant appointees holding under the recess appointments.

In *The State, ex rel., v. Matassarin*, supra, the action was by the state to determine membership of the state board of health and who was entitled to the office of secretary of the board and arose under Laws 1903, chapter 357, appearing as G. S. 1915, § 10119, which for our purposes, reads:

"Within thirty days after this act shall take effect, the governor, by and with the advice and consent of the senate, if it then be in session, shall appoint from the different parts of the state nine physicians, . . . Upon the appointment of the persons provided for in this act, the secretary of state shall issue to each of them a certificate of his appointment, and within twenty days after such appointment the said ten persons shall meet in the city of Topeka, . . . and thereupon said board shall immediately organize by electing one member of the board president. . . . The board shall also elect a secretary, and said secretary shall be the executive officer of said board, but not a member thereof. . . . It shall be the duty of the governor to fill all vacancies which may occur in the board; and all appointments whether original or to fill vacancies, made during the recess of the legislature, shall be submitted by the gov-

ernor to the senate at its first session after such appointment is made, for its action; . . . (l. c. 250.)

We shall not review the extended statement as to the recess appointments made by Governor Allen, which were submitted to the senate but not acted upon, recess appointments later made by Governor Allen, but which were not submitted to the senate by his successor, Governor Davis, the attempted revocation of appointments by Governor Davis and the naming of new appointees by him, nor as to the selection of a secretary of the board, reference to the opinion being made therefor. In rendering judgment for the plaintiff and as reflected more fully by the syllabus, this court held that the appointments of members made by Governor Allen, although not acted upon by the senate and which had never been rejected by it, entitled them to hold their offices to the end of their terms or until their appointments were considered and rejected by the senate; that in making such appointments it was the duty of the governor to transmit them to the senate for its action, and if made when the senate was in recess it was his duty to transmit them at the first session of the senate thereafter, and where the governor appoints members for a full term during a recess and the appointments are not transmitted to or acted upon by the senate at the ensuing session, the offices do not become vacant and the governor is without power to revoke their appointments by reason thereof. Other holdings require no present notice.

The above review discloses that each of the above decisions turned on the statutes under which the appointments were made and it is hardly debatable that if the statute under which the present plaintiff received a recess appointment on December 31, 1949, for a term ending December 31, 1953, was of the same tenor and effect as the statutes involved in those two cases, plaintiff would be entitled to hold office until his appointment was adversely acted upon by the senate or until it expired by lapse of time.

Attention has heretofore been directed to the original act creating the board of regents and, among other things, that the appointments made were not subject to the advice, consent or approval of the senate or any other body or authority. When, in 1939, the legislature determined to amend the original act, it was aware that the original act contained no provision that the membership include persons belonging to different political parties, about which we are not presently concerned, and that it did leave to the governor alone the matter of appointments. It considered both of these in amend-

ing the act. It was also aware of the difficulties arising from other statutes where advice, consent or approval of the senate to the governor's appointees was required and of the disposition made in the two cases reviewed. And so it attempted in the amending act, heretofore quoted, to encompass every situation which it conceived might occur.

It is unnecessary that we again review unquoted portions of the amending statute (G. S. 1949, 74-3201) as to the composition of the first board to be appointed, and that appointments of the governor thereto are with the advice and consent of the senate. Nor need we do more than refer to the fact the statute used the words "advice," "consent," "approval" and "confirmation" somewhat as though they were synonymous. The portion quoted above includes all parts of the statute relied on by plaintiff or the defendants. Referring to the first and second quoted sentences it may be said in short that they provide (1) that upon expiration of the terms of those first appointed, successors shall be appointed by the governor, with advice and consent of the senate, for a term of four years and until successors shall have been appointed and qualified, and (2) that if the senate is not in session when the appointments are made they shall hold until the senate has acted thereon. Plaintiff stresses the language of these two sentences, directs attention to his recess appointment, and that the senate did not act upon it and argues that he is still a member of the board. Were that all of the statute we could agree. But it is not all and we are not permitted under the rules of statutory construction to treat any part of a statute as superfluous. The third sentence provides that if the senate shall fail to approve the appointment, the governor shall make a new appointment to fill out the unexpired term of the member who failed of confirmation. Plaintiff argues that there was no failure to approve his appointment; that the clause refers to and means an affirmative action and occurs only when the senate, voting thereon, refuses to approve or consent. The word "fail" as defined in Webster's New International Dictionary, second edition, includes:

"1. To be wanting; to fall short; to be or become deficient in any measure or degree; . . .
"2. To be affected with want; to come short; to lack; . . .
"5. To be found wanting with respect to an action, a duty, an effect, etc.;
"a. . . .
"b. To come short of a result or object aimed at, desired or attempted; . . ."

The use of the word "fail" in the above sentence and the context

of the whole sentence leads to a conclusion that what is meant is that if the appointee is not "approved" he "fails" of approval. Under the undisputed facts there is no question that the appointment of plaintiff on December 31, 1949, was not approved by the senate, and we hold that by reason of the above statute, he failed of approval or of confirmation. When the 1951 legislature adjourned and at that session the senate had failed to approve plaintiff's appointment, a vacancy existed, which, under the fourth sentence of the provisions above quoted, the governor was empowered to fill, as therein provided.

In view of the conclusion stated in the preceding paragraph, it is not necessary that we further discuss the power of the governor to create a vacancy in the board or the effect of the naming of Barr as a successor to plaintiff. It is implicit in what has been said that the governor has no such power. If there is a vacancy it occurs only in the sequence of events and as provided by the statute. The submitting of Barr's name to the senate was at a time when plaintiff's term had not yet expired and when there was no vacancy to be filled. Under the statute, the submission of Barr's name to the senate was ineffectual.

It is apparent from the record that plaintiff received a recess appointment as a member of the board of regents in 1949 and that his appointment was not approved by the senate at the next succeeding or 1951 session of the legislature; that the senate having adjourned without approving plaintiff's appointment, a vacancy in the office occurred; that Hershberger was thereafter appointed for the unexpired term and duly qualified, and has since been acting as a member of the board.

The judgment of this court is that the plaintiff be denied the relief prayed for by him and that defendants have judgment in their favor and specifically that defendant Hershberger be and he is declared to be a duly appointed member of the state board of regents and to have and perform all of the rights, powers, duties and authority incident thereto under the laws of this state.