John H. FREDERICK
v.
UNITED STATES.
No. 111–56.

United States Court of Claims.
July 15, 1960.

Laramore and Whitaker, JJ., dissented.

Robert E. Sher, Washington, D. C., William P. Bernton, and Sher, Oppenheimer & Harris, Washington, D. C., on the briefs, for plaintiff.

Edgar H. Twine, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., Paris T. Houston, Washington, D. C., on the brief, for defendant.

MADDEN, Judge.

The plaintiff sues for disability retired pay of an Army officer. The facts relating to his Army service, his medical history, and the numerous proceedings relating to the determination by the Army that he was and is not entitled to retired pay are recited in our findings and will not be repeated in detail in this opinion.

The plaintiff was a dentist. In 1917 he was appointed a first lieutenant in the

Dental Corps of the Maryland National Guard; was mustered into Federal service in that year; was promoted to captain, and was honorably discharged in 1919. In 1923 he was appointed major in the Maryland National Guard and in the United States Officers' Reserve Corps.

On February 3, 1941, the plaintiff was appointed major, Dental Corps, in the Army of the United States, and on June 17, 1941, he was promoted to lieutenant colonel. He served with distinction and was honorably discharged on August 29, 1945, because of physical disqualification.

Our findings of fact show that the plaintiff went into active service in the Army in 1941, after having been examined and found physically fit for such service, and came out of the service in 1945 a sick and disabled man. The Army determined, and the Government in this case contends, that the plaintiff's illness and disability were not incurred, were not even aggravated, by his Army service. Having in mind the presumptions which the statutes and regulations apply to such a situation, the task of the Army and the Government in justifying such a conclusion is a formidable one.

The plaintiff's disabling illness was a mental illness. Diagnosis by visual inspection, as in the case of a wound, or by X-ray or cardiograph, as in the case of tuberculosis or heart disease, was not possible. Yet there never was any question about the existence, or the disabling character, of the plaintiff's illness. As appears above, the Army discharged him for physical disability and the disability was, admittedly, mental illness.

In view of the elusive and uncertain character of medical knowledge and theory about mental illness, it would seem that the presumption, required by Army Regulation 40–1025, that a disability which arises in military service is service-connected or at least service-aggravated would be particularly applicable and helpful in the case of mental illness. The whole purpose of the presumption, and of the accompanying provision that nothing short of "established medical

principles, as distinguished from medical opinion" should be sufficient to rebut the presumption, was to prevent the injustice of the soldier's being denied his rights because the doctors were engaged in an interesting medical dispute.

The plaintiff appeared before a Neuropsychiatric Board on February 15, 1945. That board noted its "Impression" to be that the plaintiff was suffering from "Psychosis, manic-depressive hypomanic state." He was transferred the next day to another hospital where, on February 20, the chief of the neuropsychiatric section noted on the hospital records:

"Tentative diagnosis: Manic depressive psychosis, manic type."

Captain Wise, of the Army Medical Corps, noted a similar impression on the plaintiff's hospital record, but wrote:

"LOD (Line of Duty) Yes, because of 4 years of duty before this occurred * * *."

This statement would seem to have made a good deal of sense, as it would be natural to suppose that a serious illness coming on after four years of Army service would have a causal relation to what the victim had been doing for the previous four years. But Captain Wise "after further discussion" with the chief of the hospital service changed his mind because "this was the natural course of manic-depressive psychosis."

The Government contends that the plaintiff's affliction was, and is, manic-depressive psychosis, an incurable disease which is congenital, or is in some unknown way acquired, but, when once acquired, has its disabling phases in fairly predictable periodic cycles. It may be observed that if the plaintiff in fact had this disease, it was singularly fortunate for the country that he was able to get in four years of distinguished Army service, extending almost to the end of hostilities in World War II, before the cycle reached the disabling stage which caused his discharge from the Army.

Assuming that manic-depressive psychosis is incurable, and incapable of aggravation because its periodic phases are

inevitable and unaffected by environment or activities, the problem for the Army was to determine whether the plaintiff in fact had that disease. Unless it could base a determination that he did have it "on established medical principles as distinguished from medical opinion" it was bound by statute to conclude that his disabling illness was service-incurred or service-aggravated.

In 1945 a Neuropsychiatric Board at Walter Reed Hospital, a Disposition Board and an Army Retiring Board all found that the plaintiff's disease was manic-depressive psychosis, not incurred in line of duty. They made no finding on the question of service-incurred aggravation. The Surgeon General concurred and the Secretary of War approved the findings.

In 1952 the plaintiff filed an application for review by an Army Disability Review Board. Such a board held a hearing and affirmed the findings of the 1945 Army Retiring Board. It added the finding that there had been no service-incurred aggravation of the disease, although no evidence on that subject was presented to that board, except the meager evidence which was in the 1945 record. In the 1945 record it appeared that one of the board members asked a medical witness whether anything in the plaintiff's military service might have aggravated his condition and the witness responded that he "could not prove" that such aggravation occurred. That was a remarkable inversion of the statutory presumption that aggravation is presumed, and must be disproved to justify denial of retired pay.

On March 4, 1954, the plaintiff filed an application with the Army Board for Correction of Military Records. The Adjutant General thereupon invited the plaintiff to report to the Walter Reed Army Medical Center. He was there examined by a qualified member of the staff of the Neuropsychiatric Department. That officer's report, made after some weeks' study of the plaintiff, was concurred in by the chief of the department, and by a Medical Board. The clinical abstract presented to the board said that there was no history of cyclic depression or manic attacks in the plaintiff's case. The Medical Board's diagnosis made no mention of manic-depressive psychosis. It said he had an anxiety reaction, and that his illness had been aggravated by his Army service.

The plaintiff was ordered to appear before a Physical Evaluation Board. The board reviewed the former proceedings and the designated medical witness explained in detail why the staff and the Medical Board at Walter Reed disagreed with the earlier diagnosis of manic-depressive psychosis. The Physical Evaluation Board made the following finding:

"The Board finds that, at the time individual was relieved from active military duty in 1945, he was permanently unfit for further military duty by reason of psychoneurotic disorder (anxiety reaction, chronic) which had its origin while in the active military service from 1917 and 1919 and which was permanently aggravated by military service from 1941 to 1945."

The Surgeon General, in a memorandum to the Correction Board, said:

"In view of the additional data at hand, it is believed that the evidence of record indicates that at the time this officer was separated from the service his disability was such as would have warranted his retirement for physical disability under the laws, rules, regulation, and policies then in effect."

The Correction Board thereupon recommended to the Secretary of the Army that the plaintiff's case be directed to the Army Disability Review Board for reconsideration. That board found that the causes of the plaintiff's disability were emotional instability reaction and other named features:

"which *resemble* at times: manic depressive reaction, recurrent depression, psychasthenia, hysteria and somatization reaction." (Italics supplied.)

The Board found that the plaintiff's illness was not an incident of service and was not aggravated by his service.

█ If the Correction Board had received this report of the Army Disability Review Board and had considered it, along with the report of the Physical Evaluation Board, and the memorandum of the Surgeon General, it would have had before it:

(1) The findings of the Physical Evaluation Board that the plaintiff did not have manic-depressive psychosis, but had a psychoneurosis which was susceptible to arrest and cure, and to aggravation, and that the plaintiff's psychoneurosis had been aggravated by his military service;

(2) The statement of the Surgeon General that, in view of the additional data at hand, the plaintiff should have been retired for service-connected disability;

(3) The finding of the Army Disability Review Board that the plaintiff had, certain things which *resembled* certain other things, including manic-depressive psychosis, and that his disability was not service-incurred or aggravated;

(4) The statutory presumption that a disability occurring during military service is service-incurred or service-aggravated, unless "established medical principles as distinguished from medical opinion" rebut the presumption.

The Correction Board, faced with this situation, would have had no rational alternative to a decision that the plaintiff's illness was service-aggravated. It was required to start with that presumption. The presumption was strongly reinforced by the findings of the Physical Evaluation Board and by the opinion of the Surgeon General. The findings of the Army Disability Review Board did not even purport to state "medical principles." They said, in effect, "we don't know what this man had.. His symptoms *resemble* those of a number of illnesses, including manic-depressive psychosis." In the face of the statutory presumption, and of its affirmative support as recited above, the non-committal findings of the Disability Review Board could not lawfully have been accorded any effect whatever.

The Correction Board never weighed the considerations recited above. The findings of the Disability Review Board did not go to the Correction Board. They went to the Secretary of the Army and were approved by him. The entire purpose of the establishment of the Correction Boards in the Armed Services was thereby subverted.

The plaintiff applied to the Correction Board for a "review and hearing," for his case had received no consideration whatever by the Correction Board. The Board denied the application saying that insufficient evidence had been presented to indicate probable error or injustice.

The plaintiff's statutory right to the presumption of service aggravation of his illness was disregarded by the Army. His right to consideration of his case by the Board for Correction of Military Records was denied him, by action of the Board in referring his case out to the Army for advice, and never getting the case back for consideration and decision. As we have said, if the Correction Board had considered the case they could, in view of the statute and the evidence, have rationally arrived at only one conclusion.

█ We have no authority to remand the case to the Correction Board for the consideration which they should have given it. We must, therefore, decide it as they should have decided it. If they had so decided it, the correction of the plaintiff's record would have been effective as of the date of his discharge from the Army.

Judge Littleton and the writer of this opinion would, in the circumstances, allow recovery of retired pay from the date of the plaintiff's separation from active service. The Chief Judge is of the opinion that recovery should cover only the period since the date six years prior to ·the filing of the petition. The judgment will, therefore, be for the amount computed on the latter basis.

The plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

LITTLETON, Judge (Ret.), and JONES, Chief Judge, concur.

LARAMORE, Judge (dissenting).

I believe plaintiff's petition should be dismissed for the following reasons: Just because the Correction Board believed the Retiring Board and the Physical Review Board and not the Medical Board or the Physical Evaluation Board in my opinion does not give rise to a finding of arbitrary action.

The majority opinion which states that the Physical Review Board's decision was approved by the Secretary and the Correction Board in effect blindly followed the same, and that no decision was made by the Correction Board, in my opinion is in error. If no decision had been made by the Correction Board, it would have been unnecessary for plaintiff to file an application for "review and hearing."

Furthermore, the Correction Board had before it the complete history of plaintiff's incapacity; the findings of the Retiring Board and the 1952 Disability Board's findings as opposed by the findings of the Medical Board and the Physical Evaluation Board. To say that one or the other was arbitrary in these circumstances is, in my opinion, not within the province of this court, since I believe there was substantial evidence to sustain each Board's findings. This is obviously true in a field requiring expert medical opinion. Who was right, and who was wrong, I think we cannot say.

Moreover if, as the majority says, the Correction Board did not consider the report of the Army Disability Review Board, in any event it is the approval by the Secretary concerned that is important here, and in my opinion the same reasoning applies. In other words, the Secretary was confronted with substantial evidence pointing in two directions and because he believed one and not the other is, in my opinion not arbitrary.

Furthermore, even if the action of the Secretary and the Correction Board was arbitrary, I believe the basis for plaintiff's suit stems from this action, and plaintiff's cause of action accrued at that time. To permit plaintiff to recover back to 1945 in these circumstances would violate the 6-year statute of limitations.

WHITAKER, Judge (dissenting).

I agree with Judge Laramore that there is substantial evidence to support the findings of the Secretary of the Army, whether the Secretary acted on the recommendation of the Disability Review Board or of the Correction Board. In all of these cases the question for our determination is whether or not the action of the Secretary is arbitrary or capricious, or not supported by substantial evidence. In cases such as the one at bar he ordinarily acts through the Correction Board, but the law does not require him to withhold action until the Correction Board acts, nor to adopt the findings of the Correction Board. In this case he chose to follow the advice of the Disability Review Board without awaiting formal action by the Correction Board. I think this was within his province.

Since I agree with Judge Laramore that there is substantial evidence to support the findings of the Disability Review Board and the action of the Secretary, I think we have no jurisdiction to entertain plaintiff's petition, because the law vests in the President, acting through the Secretary, authority to determine whether or not an officer shall be retired for physical disability, and I cannot say that he acted arbitrarily or contrary to the evidence. Only if the Secretary's action was arbitrary or capricious can we set aside his action and render that judgment he should have rendered.

But, the court having found that we have jurisdiction and being of the opinion that plaintiff is entitled to retirement for physical disability, I think he is en-

titled to recover from the date of the action of the original Retiring Board, because plaintiff's application to the Correction Board was to correct his record so as to show that he was physically disabled *at the time of his retirement.* Had the Retiring Board found that he was disabled at the time of his retirement, as the court now holds it should have found, he would have been entitled to recover his pay from that date, and I think we should award him judgment from that date.