(563 P.2d 1073)

No. 48,218

Wilbur Goff, *Appellant*, v. Aetna Life and Casualty Company, Incorporated, *Appellee.*

172

Opinion filed April 8, 1977.

*Edward J. Hund* and *Robert C. Brown*, of Smith, Shay, Farmer and Wetta, of Wichita, for the appellant.

*Jerry G. Elliott* and *Stephen T. Phelps*, of Foulston, Siefkin, Powers and Eberhardt, of Wichita, for the appellee.

Before FOTH, P.J., ABBOTT and PARKS, JJ.

FOTH, J.: Plaintiff Wilbur Goff brought this action to recover disability benefits under a group life, sickness and accident policy issued by the defendant Aetna Life Insurance Company. The case was tried to a jury. At the conclusion of all the evidence the trial court ordered dismissal, or in the alternative a directed verdict, based on its finding that plaintiff had not timely filed his proof of loss. Plaintiff has appealed.

Plaintiff was an employee of the Boeing Company for some 25 years, reaching supervisory status, and his coverage under the group policy arose out of that employment. His evidence indicated that perhaps as early as 1967 and certainly by the summer of 1969 he began to experience forgetfulness and difficulty in concentrating. In August, 1969, he was put on sick leave with a diagnosis from a general practitioner of "duodenal ulcer, active, abnormally nervous." Six months later he was released to go back to work, but when offered a nonsupervisory job he elected to take early retirement (at age 55) instead.

Plaintiff's employment and the payment of his premiums under the policy ceased as of February 12, 1970. Plaintiff's condition slowly deteriorated and in early 1973 he was referred to a neurologist. After extensive testing his condition was diagnosed as Alzheimer's disease. This is a rare, untreatable, terminal disease of the brain, marked by a slow loss of memory and intellectual power extending over a period of 4 to 20 years. Its onset is described as subtle and insidious, difficult to detect and frequently mistaken for other illnesses. The victim and his family, it is said, tend to compensate for and cover up the victim's deficiencies rather than to seek their cause.

The diagnosis was made in plaintiff's case on or about March 30, 1973. He filed his proof of loss with the defendant company on June 11, 1973. It is the company's position, sustained by the trial court, that this was too late because it came almost three and one-half years after his coverage under the policy had terminated.

Limitations on filing proof of loss were contained in two sources: the policy itself and the applicable Kansas statutes. The policy provided:

"Upon receipt by the Insurance Company at its Home Office, either before the discontinuance of premium payments for an employee's insurance, or within twelve months thereafter, of due proof that the employee, while insured under this Title, before attaining age sixty-five and before termination of employment with a Participant Employer, has become permanently and totally disabled, as hereinafter defined,

(1) the Insurance Company shall begin paying to the employee a monthly income in the amount hereinafter provided, and

(2) [provided for continuation of life insurance]

(3) [provided for payment of contributions for medical expense coverage]."

The policy, it may be seen, flatly required proof of loss within twelve months after premium payments stopped, or in this case not later than February 12, 1971. The June, 1973, filing was clearly out of time under the policy.

This does not end the inquiry, however, and the trial court did not base its decision on the policy terms. Group sickness and accident policies are governed by K.S.A. 40-2209. The trial court and the parties agree that insofar as it provided monthly benefits the policy here was a group sickness and accident policy and subject to that section. Subsection (B) (3) of 40-2209 commands that each such policy shall contain provisions covering, among other things, "notice of claim, proofs of loss and claim forms." It goes on to say: "Such provisions shall not be less favorable to the individual insured or his beneficiary than those corresponding policy provisions required to be contained in individual accident and sickness policies."

The reference is to the uniform policy provisions required of individual policies by K. S. A. 40-2203(A). That section, so far as applicable here, requires each policy to contain:

"(5) A provision as follows: '*Notice of claim*: Written notice of claim must be given to the insurer within twenty (20) days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible. . . .'

"(6) A provision as follows: '*Claim forms*: The insurer, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen (15) days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time

fixed in the policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.'

"(7) A provision as follows: '*Proofs of loss*: Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety (90) days after the termination of the period for which the insurer is liable and in case of claim for any other loss within ninety (90) days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.' "

These provisions, it will be noted, are somewhat more favorable to the insured than those of the policy in that the time limits otherwise imposed are waived if compliance is not reasonably possible. A notice of claim is timely under (5) even though more than twenty days have elapsed so long as filed "as soon thereafter as is reasonably possible"; a proof of loss is timely under (7) if filed "as soon as reasonably possible," subject only to the one year limitation of the last sentence. Hence, under the express terms of 40-2209 (B) (3) the policy provisions must yield to the more favorable provisions of the statute, as the court below found. *Cf. Canal Insurance Co. v. Sinclair*, 208 Kan. 753, 494 P. 2d 1197.

The trial court, in finding the proof of loss was not timely here, cited subsection (7). Presumably it relied on the last sentence, and in particular on the requirement that proof of loss be furnished "in no event . . . later than one year from the time proof is otherwise required."

The company, arguing in support of the trial court's conclusion, says that the "time proof is otherwise required" is, at the latest, the one year from termination of employment permitted by the policy, or February 12, 1971. Adding the statutory one year to that, the company arrives at a final deadline for plaintiff's proof of loss of February 12, 1972. Hence, it says, the trial court was clearly right in saying that June, 1973, was too late. (The company might concede an additional 90 days under the statute, but this would not affect the outcome.)

Plaintiff, on the other hand, argues that subsections (5), (6) and (7) of the statute are to be read and applied sequentially; first a notice of claim is filed; then the company must furnish claim forms; and only then is the proof of loss required. If his first step

was timely, he says, so must his final step be timely since it followed promptly after claim forms were furnished. He therefore devotes a good deal of his brief to demonstrating that his notice of claim was filed "as soon [after the 20 days] as reasonably possible." In support he cites cases holding that where it is not reasonably possible for an insured to know that he is disabled or that his disability is caused by a covered occurrence a notice of claim is timely if filed within a reasonable time after he becomes aware of the facts giving rise to coverage. *E.g., Beeler v. Continental Casualty Co.*, 121 Kan. 642, 249 Pac. 579; *Hawthorne v. Protective Association*, 112 Kan. 356, 210 Pac. 1086; *Commercial Travelers v. Barnes*, 75 Kan. 720, 90 Pac. 293.

The company does not quarrel with the rule of those cases as applied to a notice of claim. Neither does it contend that a jury might not reasonably find plaintiff's notice of claim here to have been timely, *i.e.*, given as soon as reasonably possible. Rather, the company like the trial court focuses entirely on the proof of loss provision, relying on its "in no event" language. Our own analysis, then, assumes that plaintiff's notice of claim might have been found timely under subsection (5), and we turn to the proof of loss requirements of subsection (7).

We must reject at the outset plaintiff's argument that subsection (7) imposes no limitation at all other than the "reasonably possible" standard. That argument ignores the "in no event" language, which we are not free to do. "[W]e are not permitted under the rules of statutory construction to treat any part of a statute as superfluous." (*Driscoll v. Hershberger*, 172 Kan. 145, 155, 238 P. 2d 493.) Instead we are bound by "the oft-repeated rule that in construing a statute courts should attempt to give effect to every word and clause." (*State, ex rel., v. Consumers Cooperative Ass'n*, 163 Kan. 324, 343, 183 P. 2d 423.) We must, therefore, ascribe some meaning to the legislative declaration that proof of loss must be filed "in no event . . . later than one year from the time proof is otherwise required."

We do not, however, construe the limitation in the same way the company does, and that is because we start with a different reference point. The outside limitation for filing proof of loss is one year from "the time proof is otherwise required." The company looks to the policy to determine when proof is "otherwise required"; because the limitation is found in the second of two

sentences in a statute prescribing the time for filing proofs we look to the statute itself. We think that the time proof is "otherwise required" is the time prescribed by the statute for the normal case.

The first of the subsection's two sentences, prescribing the ordinary time for filing proof, differentiates between two different types of losses: those of a continuing nature for which periodic payments are due under the policy; and other losses, for which presumably lump sum payments are due. We are dealing here with a loss of the former type, *i.e.*, a continuing disability for which the company is to pay monthly benefits. The statutory policy provision requires proof of loss "in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety (90) days after the termination of the period for which the insurer is liable."

In our view, the "time proof is otherwise required" for computing the one year limitation found in the last sentence of the subsection is fixed by the phrase in the first sentence, "within ninety (90) days after the termination of the period for which the insurer is liable." Our problem then becomes one of determining when the ninety days begin, or what is meant by "the period for which the insurer is liable."

The phrase speaks of a "period" and applies only in a case where "any periodic payment" is due under the policy. Where, as here, payments are due monthly it seems inescapable that each month for which a payment is due is a "period for which the insurer is liable."

If that is so, and we are convinced it is, then the statutory ninety days for filing proof of loss commences at the end of each month during which the insured is disabled. That is the time when proof is "otherwise required" by the statute to be filed, and marks the beginning of the one year maximum time for filing.

Such a construction makes the statutory policy provision, in effect, a self-contained special statute of limitations. As each month after the first 90 days plus one year goes by, a monthly benefit is barred. It may seem harsh to require the doing of an act not reasonably possible, on penalty of forfeiture, but that appears to be the result of the "in no event" language. Compare, *e.g.*, the limitations on tort actions found in K. S. A. 60-513 (*b*) and (*c*). Under both those provisions an action for personal injuries may

be barred before the fact of injury becomes "reasonably ascertainable to the injured party." In the one case the claim is barred within ten and in the other four years from the act giving rise to the injury, regardless of the injured party's lack of knowledge.

Our construction, barring each installment in turn, is consistent with the manner in which statutory limitations are generally applied to disability insurance policies. Thus, in *Everhart v. State Life Ins. Co.*, 154 F. 2d 347 (6th Cir. 1946), the insured was injured and received installment payments under his policy from 1922 to 1925. He then attempted to go to work and benefits were stopped. More than seventeen years later (in 1942) he sought benefits which had accrued from 1925 to the policy's maturity in 1939. In response to the insurer's statute of limitations defense the court held:

"The applicable statute of limitations is Section 11221 of the General Code of Ohio, which provides: 'An action upon a specialty or an agreement, contract or promise in writing shall be brought within fifteen years after the cause thereof accrued.' The statute would bar only any particular disability-benefit instalment if an action for its recovery was not brought within fifteen years from the date it became due. . . . *The right to sue on each instalment accrued when the monthly disability payment fell due and was not paid.* [Citation omitted.] *Inasmuch as the right of action on each separate instalment accrued only upon default of payment of that instalment,* the bar of the statute of limitations runs separately against each separate instalment. . . .

" . . . We are of firm conviction that the Ohio statute of limitations bars no benefit instalments payable to appellant, except those which fell due more than fifteen years before this action was brought on August 20, 1942." (p. 356. Emphasis added.)

In a similar situation the Arkansas Supreme Court stated:

"[I]n policies of insurance similar to the one under consideration and which provides a monthly indemnity to the insured for life in the event of total and permanent disability incurred during the effectiveness of the policy, suits may be instituted, prosecuted and maintained by the beneficiary at any time after receipt of such injury, but the aggregate recovery is limited to a five year period immediately prior to the filing of such suit." (*Aetna Life Ins. Co. v. Langston*, 189 Ark. 1067, 1070, 76 S. W. 2d 50 [1934].)

See also, *Aetna Life Ins. Co. v. Moyer*, 113 F. 2d 974 (3d Cir. 1940); *Alsup v. Travelers Ins. Co.*, 196 Tenn. 346, 268 S. W. 2d 90 (1953); *Pacific Mutual Life Ins. Co. v. Jordan*, 190 Ark. 941, 82 S. W. 2d 250 (1935); *Columbian Mut. Life Ins. Co. v. Craft*, 186 Miss. 234, 185 So. 225 (1938); *Universal Life & Acc. Ins. Co. v. Shaw*, 139 Tex. 434, 163 S. W. 2d 376 (1942); *Frederick v. United States*, 280 F. 2d 844 (U.S.Ct.Cl. 1960).

Those cases, to be sure, do not deal directly with proof of loss requirements. They do, however, stand for the proposition that an obligation to make periodic payments is a severable obligation, so that for limitations purposes each period for which a payment is due is considered separately. Kansas has specifically recognized and applied the principle, particularly in the area of child support payments. See, *Leonard v. Kleitz*, 155 Kan. 626, 127 P. 2d 421; *Riney v. Riney*, 205 Kan. 671, 473 P. 2d 77; *Sharp v. Sharp*, 154 Kan. 175, 117 P. 2d 561.

The result is that if plaintiff became permanently disabled while covered by the policy each subsequent month of such disability became a "period for which the insurer is liable." He had ninety days from the end of each month in which to file a proof of loss, if that was "reasonably possible." If it was not, however, he had additional time not to exceed one year from the end of the ninety days. Applying that construction here, the latest date to file for February, 1972, was May 29, 1973 (*i.e.*, 90 days plus one year from the end of February). Since the proof of loss was filed here in June, 1973, the earliest period plaintiff could reach was March, 1972. (The company has the right under the policy to require proof of the continuance of disability once it is established, but that issue is not involved here.)

We do not, of course, determine the merits of plaintiff's claim, but only that it was erroneously taken from the jury. On retrial it will be up to the finder of fact to determine whether plaintiff became totally disabled while coverage still existed, and whether he filed his notice of claim and proof of loss as soon as was reasonably possible. On the record before us those appear to be submissible issues.

Plaintiff also asks for reinstatement of his life insurance and health insurance benefits under the policy. As to the latter the policy required the insurance company, at the end of each month of disability, to make payment of the insured's "contribution" (*i.e.*, premium) under a separate medical expense policy issued by it. Each such payment, in our view, would be a "periodic payment contingent upon continuing loss" under the statute. Each is thus subject to the same principles as govern the disability income benefits discussed above.

The pure life insurance aspect of the policy, however, stands on

a different footing. As to it the policy provides, in effect, for a waiver of premiums conditioned on proof of loss as required by the policy. There are no "periodic payments" which might be covered by 40-2203 (A) (7), and there are no other statutorily required uniform policy provisions which might supplant those of the actual policy. We therefore conclude that the policy provision governs and, there having been no compliance, the life insurance is no longer in effect.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.