The TRAVELERS INSURANCE
COMPANY, Plaintiff,

v.

FELD CAR & TRUCK LEASING CORP.,
and Insurance Company of North
America, Defendants.

Civ. A. No. 76–179–C6.

United States District Court,
D. Kansas.

July 7, 1981.

John T. Conlee, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for plaintiff.

Paul H. Hulsey, Fisher, Ochs & Heck, P.A., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This matter is now before the Court on the summary judgment motion of defendant Insurance Company of North America (I.N.A.). The plaintiff in this action is The Travelers Insurance Company (Travelers). The case involves a dispute between these two insurance companies regarding the possible coexistence of coverage arising out of a vehicular accident. Travelers' claim against I.N.A. is for contribution in satisfying a judgment against its insured. The key issues presented by the defendant's motion are whether the notice to I.N.A. of the accident "was as soon as practicable," and if not, whether there must be evidence of prejudice to the insurance company before it can avoid liability due to late notice. Counsel for both parties have filed briefs

and the Court had the benefit of their oral argument. After careful consideration of both sides' contentions, the Court finds that although I.N.A. was not given notice "as soon as practicable," I.N.A. must show it was consequentially prejudiced before it can avoid liability under its policy. Therefore, the defendant's summary judgment motion shall be denied.

The vehicular accident mentioned above occurred on July 31, 1969, near Hoxie, Kansas. Travelers' insured was Midwest Research Institute (M.R.I.) of Kansas City, Missouri. At the time of the accident one of its agents was driving a van leased from Feld Car & Truck Leasing Corporation (Feld). Travelers contends Feld provided M.R.I., its lessee, with public liability insurance through I.N.A. As a result of the accident, M.R.I. was sued by Bernard Ostmeyer, the driver of the second vehicle, and he eventually prevailed in a jury trial in Federal District Court in Wichita and was awarded a $165,000 judgment on January 23, 1975.

Travelers commenced the present action on March 9, 1975, against both I.N.A. and Feld. Only M.R.I. was named as a defendant in the Ostmeyer action. By order of this Court dated March 4, 1981, Feld was eliminated as a defendant in the instant action.

The facts regarding the notice of the 1969 accident received by I.N.A. are not entirely without dispute. However, although M.R.I. immediately notified Travelers of the accident, no evidence has been produced that I.N.A. received notice of the accident before May 8, 1974, when Travelers sent I.N.A. a letter making a formal demand for contribution. This letter came over four and a half years after the accident and approximately eight months before the Ostmeyer trial commenced. Formal notice of the accident never came to I.N.A. from Feld, the holder of the I.N.A. policy, although M.R.I. gave immediate notice of the accident to Feld. The most important undisputed fact for the purpose of I.N.A.'s summary judgment motion is that at least by November 30, 1972, Travelers was aware Feld's insurance coverage was through I.N.A. This knowledge is reflected in a Travelers interoffice memorandum in which Travelers' principals discussed the strategy of impleading I.N.A. into the Ostmeyer litigation (Travelers' response to I.N.A. Req. for Adm. Nos. 30, 32). This is the earliest documented evidence revealing that Travelers knew Feld had some type of coverage through I.N.A. Consequently, over one year and five months passed before Travelers sent notification to I.N.A. on May 8, 1974, that it sought contribution from I.N.A. regarding the Ostmeyer lawsuit.

As stated earlier, the two primary issues posed by this summary judgment motion are whether the notice required by I.N.A.'s policy was given as soon as practicable, and whether insurance coverage will exist despite late notice if the carrier has not been thereby prejudiced. The defendant has raised other issues which shall be taken up at the end of this memorandum.

The notice provision of the I.N.A. policy contains the following requirement at Section D, Paragraph 3:

> When an occurrence or accident takes place written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents *as soon as practicable.* Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence or accident, the names and addresses of the Insured and of available witnesses. (Emphasis added).

The proceeding condition precedent found at Section D, Paragraph 7, is also a part of the I.N.A. policy:

> No action shall lie against the Company unless, *as a condition precedent thereto,* the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company. (Emphasis added).

I.N.A. contends that as a matter of law the notice given it of the Ostmeyer accident on July 31, 1969, was not "as soon as practicable and that consequently I.N.A. owed no coverage whatsoever.

As a general rule, the issue of late notice involves a question of fact. *See Goff v. Aetna Life & Casualty Co.*, 1 Kan.App.2d 171, 178, 563 P.2d 1073, 1079 (1977). Although the Kansas appellate courts have not had occasion to define "as soon as practicable," it generally means an insured is required to notify his insurance company of a possible claim within a reasonable time in light of all the relevant facts and circumstances. *See generally*, 18 A.L.R.2d 443 and the cases cited therein.

As mentioned earlier, the Ostmeyer accident occurred July 31, 1969, and I.N.A. first received formal notice of it on May 8, 1974, over four and a half years later. It is also pertinent to again repeat that at least as early as November 30, 1972, Travelers was aware Feld had insurance coverage through I.N.A. Moreover, Travelers is an insurance company and not the typical unsophisticated insured who is usually unaware and not knowledgeable concerning the contents of his or her insurance policies. Yet Travelers allowed over one year and five months to pass after acquiring knowledge of the identity of Feld's carrier, I.N.A., before it gave I.N.A. formal notice of a claim. Since all of these facts regarding when notice was given are undisputed, this Court has little hesitancy in finding as a matter of law that notice of a claim four and a half years after the accident was not "as soon as practicable" under all the facts and circumstances.

I.N.A. argues notice within a reasonable time should be considered a condition precedent to coverage under traditional contract law and that if notice is unreasonably late, no coverage exists regardless of the absence of prejudice to the insurance carrier. Travelers, on the other hand, contends that an insurance company should only be able to deny coverage when it has been prejudiced somehow by receiving late notice. Counsel for both sides have not cited any decisions by the Kansas courts on this question nor has this Court's research produced any. Consequently, we are required to seek guidance from Kansas' sister states.

A majority of the state courts follow the rule that prejudice is immaterial and that notice as soon as practicable of an occurrence giving rise to a possible claim is a condition precedent to an insurer's liability. *See generally*, 13 G. Couch, Insurance § 49:88 (2d ed. 1965). These jurisdictions apply traditional rules of contract interpretation. However, a strong trend exists among the courts to shun technical interpretation of these notice provisions in order to avoid forfeiture of insurance coverage unless the insurer has been materially prejudiced because of late notice. Travelers has cited the case of *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977), which is not the seminal case of this trend although it has often been relied on by state courts adopting the requirement of prejudice. In *Brakeman*, the Pennsylvania Supreme Court abandoned traditional rules of interpreting these notice provisions and gave the following rationale:

> The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can "bargain" is the monetary amount of coverage.

*Id.* 371 A.2d at 196. Although Travelers is obviously not the named insured under the

I.N.A. policy issued to Feld, the same reasoning applies here when a third party seeks the benefits of insurance coverage.

A second basis given by the Pennsylvania Supreme Court for requiring proof of prejudice was a concern for avoiding a forfeiture whenever reasonably possible. The Pennsylvania Court reasoned that when a carrier sought to deny coverage already paid for by premiums, the insurance carrier ought to be required to show a sound reason for doing so because of late notice. *Id.*, 371 A.2d at 197, citing *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 93–94, 237 A.2d 870, 873–74 (1968). Although the Kansas Supreme Court has not explicitly stated a policy of avoiding forfeitures whenever reasonably possible, we feel such a policy underlies the numerous Kansas decisions holding that insurance policies are to be strictly construed against the carrier and in favor of the insured when a policy provision is ambiguous. *See, e. g., Brown v. Combined Insurance Company of America*, 226 Kan. 223, 232, 597 P.2d 1080 (1979); *Fancher v. Carson-Campbell, Inc.*, 216 Kan. 141, 146, 530 P.2d 1225 (1975); *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 80, 483 P.2d 1072 (1971).

The fundamental purpose for requiring an insurance company to receive early notice of an occurrence which may possibly give rise to a claim is that prompt notice will afford the carrier an opportunity to investigate the occurrence and thereafter properly dispose of any claim through settlement or defense of the claim. Consequently, the notice requirement helps to protect the carrier against fraudulent and otherwise invalid claims. 13 G. Couch, Insurance § 49:2 (2d ed. 1965). In other words, the purpose for the notice requirement is to protect the insurance carrier from having its interests prejudiced. *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193, 197 (1977).

However, when an insurance carrier's interests have not been materially prejudiced because of late notice, the purpose for the notice requirement is nonexistent. It would thus be neither fair nor logical for an insurance carrier to avoid responsibility when its interests have not been prejudiced by late notice. As a general rule, the determination of whether material prejudice exists would be a fact question. 13 G. Couch, Insurance § 49:50 (2d ed. 1965); *see also, Beeler v. Continental Casualty Co.*, 125 Kan. 441, 265 P. 57 (1928).

Both I.N.A. and Travelers have cited numerous cases from various states on both sides of this issue. For example, I.N.A. has noted that prejudice is immaterial in Alabama and South Carolina. *American Liberty Insurance Co. v. Soules*, 288 Ala. 163, 258 So.2d 872 (1972); *Bruce v. United States Fidelity & Guarantee Co.*, 277 F.Supp. 439 (D.S.C.1967). Nevertheless, we are assured that our decision requiring a showing of material prejudice before a carrier can deny coverage, although possibly the minority rule, represents the better-reasoned line of cases and the trend among the states today. *See, e. g., Foundation Reserve Insurance Co. v. Esquibel*, 94 N.M. 132, 607 P.2d 1150 (1980); *Johnson Controls, Inc. v. Bowes*, 409 N.E.2d 185 (Mass.1980); *Great American Insurance Co. v. C. G. Tate Construction Co.*, 46 N.C.App. 427, 265 S.E.2d 467 (1980); *American Record Pressing Co. v. United States Fidelity & Guaranty Co.*, 466 F.Supp. 1373 (S.D.N.Y.1979) (citing Michigan law); *Colonial Gas Energy System v. Unigard Mutual Insurance Co.*, 441 F.Supp. 765 (N.D.Cal.1977); *State Farm Mutual Automobile Insurance Co. v. Milam*, 438 F.Supp. 227 (S.D.W.Va.1977); *Brandywine One Hundred Corp. v. Hartford Fire Insurance Co.*, 405 F.Supp. 147 (D.Del.1975); *Lusch v. Aetna Casualty & Surety Co.*, 272 Or. 593, 538 P.2d 902 (1975); *Oregon Automobile Insurance Co. v. Salzberg*, 85 Wash.2d 372, 535 P.2d 816 (1975); *Leuckel v. Federal Insurance Co.*, 303 F.Supp. 407 (D.Vir.Islands 1969); *Miller v. Lindgate Developers, Inc.*, 274 F.Supp. 980 (E.D.Mo.1967).

A decision requiring a showing of material prejudice requires a further determination regarding which party has the burden of showing the presence or absence of prejudice, for there is some difference regarding this issue among those jurisdictions re-

quiring prejudice. Once it has been determined notice to the insurance carrier has been unreasonably late, some states place the burden of showing the absence of prejudice upon the insured. *See, e. g., Tiedtke v. Fidelity & Casualty Co.*, 222 So.2d 206 (Fla. 1969). Again, however, we are persuaded by the reasoning of the Pennsylvania Supreme Court in placing the burden on the insurance company to prove it has been materially prejudiced by late notice. *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193, 198 (1977). In this case the Pennsylvania Court placed the burden on the carrier because the carrier sought to work a forfeiture by disclaiming its liability under the policy, and because an insurance policy is "not a truly consensual agreement" in that most of its terms are adhesionary. *Id.* For these reasons, the Pennsylvania Court reasoned it was more equitable to place this burden on the insurance company rather than the insured.

Although in the instant litigation we have an insurance company seeking the benefit of an insured's policy against another carrier instead of the insured himself in court, it is still appropriate to set a general rule for this issue. Accordingly, this Court finds that at the trial of this case the defendant insurance company should have the burden of proving it was materially prejudiced by receiving notice of the July 31, 1969 accident over four years later. Although this Court recognizes such a delay would normally prejudice a carrier's position, in that witnesses might be unavailable, memories would have faded and the accident scene may have changed, for example, in this unusual case Travelers began its own investigation of the case immediately and thereby, according to Travelers' argument, protected the interests of I.N.A. Whether this is true is for the jury to decide.

Two final issues are raised by I.N.A. in its motion for a summary judgment. The first of these two issues is whether the Travelers suit against I.N.A. is barred by the statute of limitations. I.N.A. contends Travelers failed to file their lawsuit within the applicable three year limitation period provided in K.S.A. 60–512 for implied obli-

gations on contracts. All of Travelers' legal theories, contribution, indemnity and subrogation, are based on the idea of an implied contract. I.N.A. argues that the limitations statute was triggered by Travelers' advance payments to Ostmeyer between September, 1969, and July, 1970, or at least by the date when Travelers knew Feld had coverage through I.N.A., as evidenced by Travelers' in-house memo dated November 30, 1972.

■■■ The rule in Kansas on when a cause of action for contribution accrues is that the right of contribution arises and becomes enforceable when the party seeking contribution pays more than its fair share of an obligation. *Cipra v. Seeger*, 215 Kan. 951, 953, 529 P.2d 130 (1974). In this case, the Kansas Supreme Court held no right to contribution arose where a judgment, although entered, had not yet been satisfied. *Id.* It follows that for the purposes of determining the beginning of a statute of limitations for an action based on contribution, the Court must look to the date a judgment has been satisfied. In the instant case, Travelers paid Ostmeyer's $165,500.00 jury verdict after it was awarded him on January 23, 1975. Although the exact date of payment of this judgment is not evident from the Court's file, it obviously occurred within three years of the date on which Travelers filed its suit against I.N.A., March 9, 1976. The fact that Travelers made advance payments to Ostmeyer in 1969 and 1970 is inconsequential for the purpose of determining whether the limitations period has run since the triggering date is when Travelers satisfied the Ostmeyer judgment.

■■■ The final issue raised by I.N.A.'s brief concerns whether the notice received by I.N.A. was inadequate because it was conveyed to it by Travelers rather than by I.N.A.'s insured, Feld. The I.N.A. policy required notice to be conveyed by the "insured" or by some agent "on behalf of the insured." Although Travelers does not address this issue in its legal memorandum in opposition to the summary judgment motion, Travelers does point out in its suggested findings of fact (Dkt. No. 68) that M.R.I. was an omnibus insured under the I.N.A.

policy issued to Feld. The I.N.A. policy, AGP 08 91 15, contains a Comprehensive Automobile Liability Endorsement which defines "Insured" as the "Named Insured and ... any person while using an owned automobile or a hired automobile and any person or organization responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or with his permission...." Since M.R.I. was the lessee of Feld, the named insured, it had Feld's permission to use the vehicle involved in the accident with Ostmeyer, and thus M.R.I. was also an insured under the I.N.A. policy. Moreover, since Travelers represented M.R.I. throughout the Ostmeyer litigation, it had authority to make a claim for M.R.I. against Feld and I.N.A. Consequently, I.N.A.'s contention that the notice conveyed was inadequate because it was given by Travelers also fails.

For all of the foregoing reasons, the motion by I.N.A. for a summary judgment is overruled. However, this Court does find as a matter of law that the notice given I.N.A. of the accident occurring July 31, 1961, was unreasonably late. In order to avoid liability under its liability insurance policy with Feld Car & Truck Leasing Corporation, I.N.A. has the burden of showing its interests were materially prejudiced by virtue of this fact.