No. 25,111.

THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, as Attorney-general, *Plaintiff*, v. LEON MATASSARIN et al., *Defendants*.

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*To Determine Legal Membership of State Board of Health—Recess Appointments Made by the Governor—Tenure of Office of Recess Appointees.* Persons appointed by the governor as members of the state board of health in pursuance of section 10119, of the General Statutes of 1915, were submitted to the senate for its action, but that body failed to act thereon and has not since that time rejected the appointments. After the adjournment of the legislature the governor issued commissions to the appointees for terms of three years, which have not yet expired. While these officers were serving under the appointments made, the newly elected governor notified these members that the senate not having confirmed their appointments he had revoked them. *Held,* that the appointments of the members, although not acted on by the senate and which have never been rejected by that body, entitles them to hold their offices to the end of their terms or until the appointments are considered and rejected by the senate.

2. SAME—*Confirmation or Rejection of Recess Appointments Appearing in Journals of Senate—Recital of Confirmation in Commission Issued to Appointee.* Whether or not the senate confirms or rejects appointments should appear in the journals of that body and even if evidence other than that shown in the journals as to the action of the senate on appointments may be received, it is held that a mere recital in the commission issued to the appointee by the governor that the appointments had been confirmed does not establish the fact.

3. SAME—*Duty of Governor as to Recess Appointments—Effect of Failure of Governor to Transmit Names of Recess Appointees to Senate.* In making appointments of members of the state board of health, it is the duty of the governor to transmit such appointments to the senate for its action thereon, and if such appointments are made during a recess of the legislature, it is his duty to transmit such appointments to the senate at the first session after the appointments are made and where the governor reappoints and commissions members of the board for full terms during a recess of the senate and such appointments are not transmitted to or acted upon by the senate at the ensuing session, the offices do not become vacant by such inaction and the governor is without power to revoke their appointments by reason thereof.

4. SAME—*Effect of Failure of Appointee to File His Oath of Office.* In the absence of a statutory provision that the failure of an appointee to take and file his oath of office shall operate to create a vacancy, such failure by one who is appointed and has entered upon the discharge of his duties, and no action is brought by the state to declare a forfeiture of the office for such omission, will not of itself operate to create a vacancy in the office.

5. SAME—*Legal Member of Board, Participating in Illegal Meeting of Board, Does Not Work a Forfeiture of His Right to Hold His Office.* The action of a legal member of the board in qualifying under an appointment, attending and participating in an illegally constituted meeting of the board, where there was less than a quorum of those who assumed to act at such meeting, cannot be regarded as a resignation of his office or as affecting the title to the office with which he had been vested under a previous legal appointment.

6. SAME—*Legal Meeting of Board—Majority of Legal Members Present—Proceedings of Such Meeting Valid.* Under the evidence in the case it is held that a meeting of the board duly held on June 5, 1923, and attended by a majority of legal members of the board, was a legally constituted meeting and its acceptance of the resignation of the secretary and executive officer of the board, and the election of his successor, vested the latter with a good title to his office.

Original proceeding in quo warranto. Opinion filed July 7, 1923. Judgment for plaintiff.

*C. B. Griffith,* attorney-general, *Dennis Madden,* assistant attorney-general, for the plaintiff; *Robert Stone, George T. McDermott, Robert L. Webb,* and *Beryl Johnson,* all of Topeka, of counsel.

*Frank Doster, E. D. McKeever,* both of Topeka, and *W. H. Carpenter,* of Marion, for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding in quo warranto, brought in the name of the state on the relation of the attorney-general to determine the membership of the state board of health,

and also as to who is entitled to the office of secretary of that board. The plaintiff alleged that the state board of health is composed of the following named persons who were legally appointed, were duly qualified and are acting members of the board, namely: Dr. J. E. Hawley, Dr. J. J. Entz, Dr. C. H. Lerrigo, Dr. J. T. Axtell, Dr. F. W. Landrum, Dr. H. L. Aldrich, Dr. O. D. Walker, Dr. C. A. Fisher, Dr. D. E. Smith, Harry K. Allen.

It appears that in 1918, Drs. Walker, Aldrich and Lerrigo, had been duly appointed and had received commissions during a recess of the senate to hold terms of office, expiring in March, 1921, and that oaths of office had been duly filed by them. On March 16, 1921, the governor reappointed them to succeed themselves for terms of three years and on the same day messaged the appointments to the senate for its action. The records of the senate do not show what action, if any, was taken on the message. In issuing commissions to these doctors the governor recited in them that he was appointing them by and with the advice and consent of the senate for a three-year term, ending on March 28, 1924. Dr. Lerrigo filed his oath of office at that time, but Walker and Aldrich did not. Prior to 1922, Drs. Axtell, Hawley and Entz had been duly appointed and had acted as members of the board for terms expiring March 30, 1922. On that date, Governor Allen reappointed and commissioned them for terms of three years, expiring in March, 1925. Drs. Hawley and Entz made and filed their oaths of office, but Axtell did not. The senate not being in session in 1922, these appointments were not then confirmed and when the senate convened in 1923, the appointments of these members were not messaged by the governor to the senate, and no action was taken on them during the session of 1923. Those appointed in 1921 and 1922, all entered upon the duties of their offices and continued to discharge those duties until March 28, 1923. At that time, Governor Davis addressed a letter to each of the aforementioned appointees of Governor Allen, making inquiries as to age, school of medicine, time of active practice, political affiliations, and his attitude as to the appointment of a new secretary of the board, and also if he would be willing to resign on invitation. As no resignations were tendered, Governor Davis, on April 18, wrote a letter to Aldrich, Lerrigo and Walker, notifying them that he had revoked the appointments given them for terms beginning March 25, 1921, and ending March 28, 1924, and stating that the revocation was

based on the ground that the appointments had been sent to the senate for confirmation and that no action had been taken thereon. On April 18, 1923, the governor also notified Drs. Axtell, Hawley and Entz, who had been appointed in 1922 for terms ending in 1925, that he had revoked their appointments, saying that he did so "because the appointment is not approved by the senate. It was not sent to the senate and of course no action had been taken thereon." On April 19, 1923, the governor announced the appointment of Dr. Axtell for the term ending March 25, 1925, and a commission was issued to him, whereupon he took and filed his oath of office. On April 19, 1923, the governor also announced that he had appointed Dr. Aldrich for the term ending March 28, 1924, and a commission was issued to him, whereupon he took and filed an oath of office as a member of the board under the appointment. On or about April 18, 1923, Governor Davis, after the attempted revocation mentioned, appointed and commissioned as members of the board: Dr. D. E. Smith, Dr. F. W. Landrum, Dr. C. A. Fisher, Dr. W. G. Patton, Dr. J. A. Connor, Dr. C. A. Laffoon, Dr. C. R. Lytle, who each took and filed an oath of office. Patton was appointed to succeed Walker, Connor to succeed Lerrigo, Laffoon to succeed Hawley, and Lytle to succeed Entz. It is conceded by both parties that Drs. D. E. Smith, F. W. Landrum, and C. A. Fisher were legally appointed and are entitled to serve as members of the board. On notice from the secretary the appointees of Governor Davis just named and also Drs. Axtell and Aldrich, held a meeting on May 14, 1923, at which Dr. Patton was temporarily appointed as president, and Dr. Laffoon as vice president. About June 1, 1923, Governor Davis notified Dr. Axtell that he had revoked his appointment and commission as a member of the board of health on the alleged ground of partisan political activity, but Dr. Axtell replied, denying political activity and also the right of the governor to remove him before the expiration of his term of office. About that time the governor appointed Robert G. Klein as a member of the board to succeed Dr. Axtell and issued him a commission, whereupon he took and filed his oath of office. In the early part of June, Dr. Landrum resigned his office and the governor appointed Dr. Henry Smith to succeed him. The annual meeting, which was to have occurred on June 27, was advanced to June 7, and was attended by eight of the aforenamed appointees of Governor Davis, but Dr. Aldrich, one of the Davis appointees, failed to attend. At this meet-

ing on June 7, the board so constituted elected Dr. Matassarin as secretary of the board to serve for a period of four years and he immediately took the oath of office and executed a bond for the faithful performance of his duties.

At an annual meeting held in 1922, Dr. Hawley had been elected president of the board, and on June 1, Hawley instructed the secretary to notify the legal members of the board that a meeting would be held on June 5, 1923. Pursuant thereto, the secretary sent notices to those designated as the Allen members and also to the appointees of Governor Davis, whose right to the office was conceded by the plaintiff. The meeting was held on June 5, and was called to order by Dr. Hawley. At that meeting Drs. Axtell, Aldrich, Lerrigo, Hawley, Walker, Entz and Crumbine were present. Dr. Hawley was then nominated and unanimously elected president by those present for the coming fiscal year. At the same time Dr. Crumbine presented his resignation to the state board of health, which was accepted. On motion, which was duly seconded, Dr. Milton O. Nyberg, of Wichita, Kan., was nominated as secretary and executive officer of the board to succeed Dr. Crumbine, and was unanimously elected for a term of four years from date. Dr. Nyberg, the new secretary, was instructed to ignore the actions and proceedings at the meeting of the challenged members, appointed by Governor Davis, and to refuse to turn over the records or property of the department or permit the holding of sessions in the offices of the state board of health by them. He was also instructed to ignore the proceedings of what was termed the illegal meeting, held on May 4, and not to include the transactions of that meeting in the records of the board. Immediately after his election by the board on June 5, 1923, Dr. Nyberg filed his oath of office and presented to the governor for approval his bond, signed by a surety company. The governor refused to approve the bond but did not raise any objection to the adequacy of the surety and it is admitted that the bond is adequate and regular both as to amount and responsibility of the surety. Immediately after filing his oath of office, Dr. Nyberg entered upon his duties, took possession and control of the office of the secretary and executive officer of the board, and of all the files and records belonging to the board. These proceedings were taken, however, without the knowledge or consent of any of the appointees of Governor Davis, except Dr. Aldrich and Dr. Axtell. Shortly after

taking possession of the office by Dr. Nyberg and while he was temporarily absent from it on the 7th day of June, 1923, the Davis appointees entered the rooms without the consent of Dr. Nyberg and claimed the right to the possession and control of the records. The present proceeding was then brought to determine who were the legal members of the board and who was entitled to the office of secretary. On application of Dr. Nyberg, he was allowed to intervene as a party and set up his claim that he was entitled to the office of secretary and executive officer of the board.

The state insists that the group of members appointed by Governor Allen in 1921, which consisted of Walker, Lerrigo and Aldrich, were in fact confirmed by the senate and if not confirmed were at least not rejected and that having been appointed and in possession of their offices there was no vacancies and the governor was without power to remove them and having no power to remove, he had no authority to appoint their successors. The defendants contend that the appointment of these officers had never been confirmed by the senate, that they were holding over under appointments and confirmations previously had and as the governor had the power to make recess appointments he was authorized to treat their terms as expired and to appoint their successors.

As to a confirmation of the appointments made in 1921, the senate journal recites that they were submitted to the senate for its consideration on March 16, 1921, but it contains no mention or record of the action taken thereon. In the commissions subsequently issued to them by the governor there is a recital of confirmation by the senate and under these commissions the appointees entered upon their offices, performed the duties of the same and were recognized as such officers by the other departments of the government. In this situation it is conceded that confirmations may be implied. The evidence of the action of the senate should be found in its journals and records instead of in recitals in the commissions issued by the governor. Those recitals cannot be regarded as proper proof of the action taken by the senate. It is argued that no evidence outside of that contained in the journals is admissible to show what was or was not done by that body. Whether the rule, which governs as to proof of legislative action on a bill, obtains as to the action taken by the senate in giving advice and consent to appointments of the governor or whether, in the silence of the journals as

to what, if any, action was taken, proof outside of the journals may be resorted to, it is unnecessary to decide. It appears that valid appointments were made, the journals do not show a rejection of the appointees by the senate and no evidence, tending to show rejection, has been produced. The senate of course can take its own time for the consideration of appointments and as to its consent or its concurrence in them. Assuming as we must that the appointments in question were neither confirmed nor rejected by the senate in the session of 1921, what is the effect of the commissions that were issued by the governor to the appointees after the senate adjourned without action appointing them for the full term and which did not expire until March, 1924? The appointments clothed the appointees with all the powers and prerogatives of the offices for the terms named, subject only to be terminated by rejection of the senate, resignation, death or removal from office for cause by officers or tribunals vested with authority to remove. The pertinent statute, creating the state board of health, providing for the appointment and qualification of its members and prescribing their terms as well as the filling of vacancies, is as follows:

"Within thirty days after this act shall take effect, the governor, by and with the advice and consent of the senate, if it then be in session, shall appoint from the different parts of the state nine physicians, who shall be men of good moral character and temperate habits, distinguished for their devotion to the study of medicine and allied sciences, and not less than seven years' continuous practice in their profession, and each of whom shall be a graduate of a reputable medical college. The governor shall also appoint one other person, not a member of the medical profession (preferably an attorney interested in sanitary sciences), and said persons, when so appointed and confirmed shall be known as 'The Kansas State Board of Health.' Three of the members of said board shall be appointed for one year, three for two years, and four for three years; and annually thereafter the governor shall in like manner appoint successors of like character and qualifications to fill the vacancies occurring in said board by reason of the expiration of the terms of service as herein provided, and the persons so appointed shall hold their respective offices for the like term of three years, and until their successors are appointed and qualified; but in no case shall the governor appoint a majority of the physicians that shall constitute said board of health from any one school of medical practice, nor shall said board at any time be composed of persons a majority of whom shall be of the same school of medical practice. Upon the appointment of the persons provided for in this act, the secretary of state shall issue to each of them a certificate of his appointment, and within twenty days after such appointment the said ten persons shall meet in the city of Topeka, and they shall each take and subscribe to the oath prescribed by law for state officers, which shall be filed with the secretary of state; and thereupon said board shall

The State, *ex rel.*, v. Matassarin.

immediately organize by electing one member of the board president. The member of said board who is not a physician shall have no vote in the election of officers, but shall have a vote on all other questions arising in the regular quarterly meetings of the board. The president of said board shall have no vote on any matter other than the election of officers unless there is a tie vote, when he shall have the deciding vote. The board shall also elect a secretary, and said secretary shall be the executive officer of said board, but not a member thereof. The secretary shall execute to the state of Kansas a bond in the sum of five thousand dollars, with sureties, to be approved by the governor, and when approved it shall be filed in the office of the secretary of state. Said bond shall be conditioned for the faithful performance of duties of his office as such secretary, and he shall take and file a like oath to that prescribed for the members of said board. The board may elect one of its own number secretary, but in such case such election shall create a vacancy in the board, which shall be filled by the governor. It shall be the duty of the governor to fill all vacancies which may occur in the board; and all appointments whether original or to fill vacancies, made during the recess of the legislature, shall be submitted by the governor to the senate at its first session after such appointment is made, for its action; but all lawful actions of the members of the board made before confirmation or rejection shall be valid. The executive council shall provide the state board of health with a suitable office at the city of Topeka for the transaction of its business." (Gen. Stat. 1915, § 10119.)

The statute as will be observed provides that the board shall be composed of trained and experienced doctors of different schools of medicine, three to be appointed each year after the first appointments are made, so that after the organization is completed and the regular order obtains, there will be a majority of the members who will always be familiar with the functions and responsibilities of the board. The terms are definitely fixed and are not shortened or lengthened because of changes in the administration or of incumbents in the governor's office. The governor is vested with power of appointment with a requirement that the appointments are to be made upon the advice and consent of the senate "if it then be in session." When it is not in session the governor has authority to make appointments at the end of terms or to fill vacancies that may occur between sessions. The regular appointments are for three year periods and if there is a death, resignation or removal, the successor appointed can only hold for the remaining portion of his predecessor's term. However, there is no authority to appoint a successor to a member in recess unless there is a vacancy in the office. The three members whose terms we are considering and who, had been appointed for terms expiring in 1924, had not resigned nor had they been removed from office by one having authority to re-

move them.  They were in possession of their offices under a valid appointment and the offices were in no sense vacant.  Another person had been elected as governor but he had the same and no greater power than his predecessor had to declare vacancies in the offices of the members of the board.  His predecessor could not have revoked, during his incumbency, the appointments at will nor have shortened the terms of service of the appointees unless there had been a rejection by the senate or an ouster or removal for cause in the manner provided by law.  The supreme executive power vested in the governor is a continuous one and is to be exercised as the law provides by the one who happens to hold the office at the time of its exercise.  Terms of office are not ended nor is there any authority to revoke appointments because there has been a change or succession in the office of governor.  The offices held by the group under consideration were not vacant when the attempted revocation of their appointments were made and the governor had no power to appoint their successors.  (*Barrett v. Duff*, ante, p. 220, and companion cases, just decided.)  In respect to members Axtell, Hawley and Entz, it is shown that they were appointed as their own successors on March 30, 1922, when the senate was not in session.  They were commissioned for full terms of three years and have been serving as members of the board since that time.  No action has been taken by the senate on the appointments so made nor have the names of the appointees been presented to the senate for confirmation.  Having been appointed during a recess of the legislature it was the duty of the governor under the statute quoted to submit these appointments to the senate at the session of 1923.  It is provided that:

"All appointments whether original or to fill vacancies made during the recess of the legislature, shall be submitted by the governor to the senate at the first session after such appointment is made for its action."

If the appointments had been submitted to the senate and it had considered and rejected them, a vacancy would have been created and the governor would have had power to appoint their successors to hold during the remainder of their terms.  As the senate did not act upon or reject the appointments made these officers had as good a title to their offices as the governor or other elected officers have to theirs.  They were not appointed and commissioned to hold until the next session of the legislature but for the full terms of three years and are entitled to hold out their terms unless the senate after consideration should vote to reject them or they should be ousted from office for misconduct.  The attempted revocation of these appoint-

ments and the appointment of their successors must be held to be without effect. (*Barrett v. Duff,* supra.)

There is a contention, however, that all of these contested appointees cannot be regarded as lawful members of the board with the right to vote for a secretary because three of them failed to take and file their oaths of office when they were appointed in 1921 and 1922. Those who omitted to file their oaths of office at the time of appointment had been reappointed to succeed themselves and had since that time been serving as members of the board. Two of these who were appointed by Governor Davis did make and file their oaths shortly before the present action was brought. In the absence of a provision in the law that such failure shall *ipso facto* operate as a forfeiture of the office or create a vacancy, there is no vacancy or separation from office. The state has taken no steps to have a forfeiture declared or to oust these members from office for the omission to take and file their oaths and their omission did not create a vacancy warranting the appointment of their successors. (*Jones v. Gridley,* 20 Kan. 584, *Carpenter v. Titus,* 33 Kan. 7, 5 Pac. 412; *Insurance Co. v. Gasche,* 93 Kan. 147, 142 Pac. 882.) Neither did the fact that Axtell and Aldrich, to whom Governor Davis tendered appointments and who took and filed oaths of office attended a meeting held on May 4, and participated in the proceedings of that meeting, affect their title to the offices they already occupied under previous legal appointments. The majority of those who assumed to hold that meeting were not legal members of the board and the attendance and acts of Axtell and Aldrich were in no sense a resignation of the offices they held under appointments previously made. Their action was not intended as a resignation or surrender of their offices and unless they resigned from the offices the governor as we have seen was without power to appoint their successors. The meeting held on June 5, was duly called and was composed of a quorum of legal members of the board. It was a legally constituted meeting with power to transact the business of the board, including the acceptance of resignations and the election of officers which the law empowers the board to elect. At that meeting Dr. Crumbine tendered his resignation which was formerly accepted by the board, and it then proceeded to elect Dr. Nyberg as secretary and executive officer of the board. He accepted the office, made and filed his oath of office and tendered a bond, the sufficiency of which is not questioned. It was not approved by the governor, to whom it was presented. The governor it appears did not withhold approval be-

cause of the insufficiency of the security, but upon the ground that Nyberg had not been legally elected. An officer vested with the authority to approve an official bond has no right to withhold his approval on the ground that in his opinion the person offering to qualify was not legally elected, and had no title to the office. (*State, ex rel. Dalrymple, v. Stockwell,* 7 Kan. 103; *Schmulbach et al., v. Speidel et al.,* 50 W. Va. 553; Throop on Public Officers, §§ 170, 172.) . Nyberg was legally elected and had done all he could towards furnishing a sufficient bond, and the withholding of approval on the ground that he was not lawfully chosen, did not affect his title to the office. The members who elected him are held to be legal members of the state board of health and Dr. Nyberg is held to be entitled to the office of secretary and executive officer of the board. That will be the judgment of the court.

HARVEY, J. (concurring in the result) : The statute relating to the appointment of members of the state board of health (Gen. Stat. 1915, § 10119), specifically provides that "all appointments, whether original or to fill vacancies, made during the recess of the legislature, shall be submitted by the governor to the senate at its first session after such appointment is made for its action." This the governor did not do. He cannot take advantage of his own dereliction in that regard and after the legislature adjourns treat the offices as vacant or attempt to remove the incumbents and appoint others in their places. I, therefore, concur in the result. I cannot agree that the appointees by the governor hold until they are rejected by the senate. The statute requires the advice and consent of the senate to the appointment and this means affirmative action under article 7 of our constitution, which provides that the yeas and nays shall be entered in the journal. The silence of the senate journal is no more proof of confirmation of appointees whose nominations have been sent to the senate by the governor than would silence of the senate journal be evidence of the passage of a bill.

DAWSON, J. (concurring specially) : I concur in the result, chiefly because the governor neither followed the statute requiring the names of recess appointees to be sent to the senate for confirmation, nor did he take the only effective method of terminating the recess appointments made by his predecessor, which would have been by sending to the senate for approval the names of other persons in their stead.