IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,061

STATE EX REL. DEREK SCHMIDT, ATTORNEY GENERAL,
*Petitioner*,

v.

GOVERNOR LAURA KELLY, in Her Official Capacity, CHIEF JUSTICE LAWTON R. NUSS, in
His Official Capacity, and
KANSAS SENATE,
*Respondents.*

SYLLABUS BY THE COURT

1.

On the facts and circumstances of this case, the Senate is not a proper or necessary party and is dismissed from the action brought on behalf of the State to determine the authority under K.S.A. 2018 Supp. 20-3020 of either the Governor or Chief Justice to make a new appointment to fill a Court of Appeals vacancy after the Governor's original appointee's purported withdrawal.

2.

Statutory interpretation presents a question of law subject to de novo review. When interpreting a statute, a court first attempts to discern legislative intent through the statutory language, giving common words their ordinary meanings.

3.

K.S.A. 75-4315b is inapplicable to Court of Appeals appointments made under K.S.A. 2018 Supp. 20-3020.

1

4.

Courts ordinarily will not read a statute so as to add that which is not readily found in the language.

5.

K.S.A. 2018 Supp. 20-3020 does not authorize withdrawal of a Court of Appeals appointment by the Governor or the appointee once that appointment is made.

6.

Under K.S.A. 2018 Supp. 20-3020(b), an appointment can fail only if the Senate holds a vote to consent not later than 60 days after receiving the appointment and a majority of the Senate does not vote to consent to the appointment.

Original action in quo warranto. Opinion filed May 10, 2019. Quo warranto granted.

*Derek Schmidt,* attorney general, argued the cause, and *Jeffrey A. Chanay*, chief deputy attorney general, *Toby Crouse*, solicitor general, *Dwight R. Carswell*, assistant solicitor general, *Bryan C. Clark*, assistant solicitor general, *M.J. Willoughby*, assistant attorney general, and *Kurtis Wiard*, assistant attorney general, were with him on the brief for petitioner.

*Clay Britton*, chief counsel, Office of the Governor, argued the cause, and was on the brief for respondent Governor Laura Kelly.

*J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, appeared, and *Samuel A. Green*, of the same firm, was with him on the responses for respondent Chief Justice Lawton R. Nuss.

*Jeffrey R. King*, of Sage Law, LLP, of Overland Park, argued the cause and was on the brief for respondent the Kansas Senate.

2

The opinion of the court was delivered by

BILES, J.: This is an expedited original action in quo warranto brought by the State on relation of the Attorney General against Governor Laura Kelly, Chief Justice Lawton R. Nuss, and the Kansas Senate concerning statutory procedures and obligations to fill a vacancy on the Kansas Court of Appeals. Controversy arose after an appointee purported to withdraw shortly after the Governor announced the appointment. Disputes now abound whether anyone has authority to take another step in the process. An additional complication is presented because the Governor announced a new appointment to the fill the same vacancy after this lawsuit was filed.

The controlling statute is K.S.A. 2018 Supp. 20-3020(b), which provides in pertinent part:

> "No person appointed pursuant to subsection (a) shall assume the office of judge of the court of appeals until the senate, by an affirmative vote of the majority of all members of the senate then elected or appointed and qualified, consents to such appointment. *The senate shall vote to consent to any such appointment not later than 60 days after such appointment is received by the senate*. . . . In the event a majority of the senate does not vote to consent to the appointment, the governor, within 60 days after the senate vote on the previous appointee, shall appoint another person possessing the qualifications of office and such subsequent appointment shall be considered by the senate in the same procedure as provided in this section. The same appointment and consent procedure shall be followed until a valid appointment has been made. . . . *If the senate fails to vote on an appointment within the time limitation imposed by this subsection, the senate shall be deemed to have given consent to such appointment*." (Emphases added.)

It is undisputed the Governor had to make her appointment to fill the Court of Appeals vacancy within 60 days of the vacancy in order to comply with K.S.A. 2018

3

Supp. 20-3020(a)(4), that she made the appointment on the 60th day, and her office hand-delivered documentation to that effect to the Senate Majority Leader's office. As explained below, we hold those actions effectively began the statutory 60-day Senate confirmation process as to the first appointee and that the statute makes no provision for a withdrawal once an appointment is made. To infer an ability to withdraw requires adding words to the statute, which is something courts avoid under circumstances such as this. See *Nauheim v. City of Topeka*, 309 Kan. 145, 150, 432 P.3d 647 (2019) ("The court will not speculate about legislative intent and will not read the statute to add something not readily found in it."); *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 464-65, 228 P.3d 403 (2010) ("[A]ppellate courts cannot delete vital provisions or add vital omissions to a statute if the legislature failed to enact the change as intended under any reasonable interpretation of the language used, regardless of the legislature's intention.").

We further hold that K.S.A. 75-4315b(c), which generally authorizes that "[a]n appointing authority may withdraw an appointment from consideration by the senate at any time before confirmation," is inapplicable to Court of Appeals vacancies. Arguments that this more general statute supplies withdrawal procedures missing from K.S.A. 2018 Supp. 20-3020 are unavailing. K.S.A. 2018 Supp. 20-3020(b) plainly provides the only way for an appointment to fail is by the Senate's vote. Accordingly, the Governor's new appointment is ineffective because there may be only one appointee at a time. As a matter of law, the second appointment must be treated as if it never happened.

But before discussing the merits, we address sua sponte whether the Senate is properly named as a party to this quo warranto action. And for the reasons stated below, we hold the Senate is not a proper or necessary party and dismiss it from this case. That said, we necessarily considered the Senate's legal arguments in the course of analyzing the applicable statutes.

4

FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. Judge Patrick D. McAnany retired from the Kansas Court of Appeals effective January 14, 2019. Sixty days later, on March 15, Governor Kelly announced her appointment of District Court Judge Jeffry Jack to the vacancy created by that retirement. Later that same day, the Governor's appointments coordinator hand-delivered documents signed by the Governor indicating the nature of Judge Jack's appointment along with an information packet about him to the Senate Majority Leader's office. This delivery method and the type of documents supplied were typical of the process generally used for gubernatorial appointments subject to Senate confirmation.

By letter dated March 18, Judge Jack announced he was withdrawing from his appointment at the Governor's request. The following day, the Governor conveyed to the Senate Majority Leader that Judge Jack had withdrawn at her request. She also informed the Majority Leader she would appoint someone else to fill the McAnany vacancy within 60 days. The facts prompting Judge Jack's purported withdrawal, while highly publicized, are not part of our stipulated record.

After the announced withdrawal, the Governor, Senate President Susan Wagle, and the Attorney General disagreed about what could be done next to fill the McAnany vacancy. The State then brought this original action in quo warranto on relation of the Attorney General asking this court to determine who holds the appointing authority, if anyone, under the circumstances.

We granted a motion to expedite. The State, Governor, and Senate filed briefs addressing the case's merits. The Chief Justice filed a response expressing his intention to

5

remain neutral and to refrain from advocating a position on the merits. The parties entered a stipulation of facts.

On April 30, Governor Kelly announced she appointed Sarah Warner to fill Judge McAnany's vacancy.

DISCUSSION

Article III, section 3 of the Kansas Constitution grants the Supreme Court original jurisdiction over actions in quo warranto. Relief in quo warranto is discretionary. We may entertain the current proceeding if we determine the issue is of sufficient public concern. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 53, 687 P.2d 622 (1984). All agree this controversy over an appellate judge's timely appointment presents a matter of significant public concern.

An action in quo warranto demands that an individual or corporation show by what authority it has engaged in a challenged action. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 656, 367 P.3d 282 (2016). K.S.A. 60-1202(1) provides an action in quo warranto may be brought in the Supreme Court: "When any person shall usurp, intrude into or unlawfully hold or exercise any public office, or shall claim any franchise within this state, or any office in any corporation created by authority of this state." This action challenges the Governor's attempt to appoint Warner to fill the Court of Appeals vacancy.

*The Senate's capacity to be sued*

This court ordered the parties to address whether they object to the capacity of any party to sue or be sued in this quo warranto action. None object. Nevertheless, the legal

6

question concerning whether the Legislature, or one house of the Legislature, can be sued is unsettled and it is legitimate for this court sua sponte to consider if the Senate has the capacity to be involved in this litigation.

In *Kansas House of Representatives*, 236 Kan. at 46, the State filed an original action in both mandamus and quo warranto against the Kansas House of Representatives, the Senate, and Governor Carlin. It challenged the constitutionality of a statute that allowed the Legislature to adopt, modify, or revoke administrative rules and regulations by concurrent resolution without presentment to the Governor. The lawsuit was brought not only to test the statute's validity but also to challenge the Legislature's previous actions under the statute.

The Legislature moved to dismiss the case against it on various grounds—such as sovereign immunity, insufficient service of process, and immunity from suit under the Speech or Debate Clause in Article II, section 22 of the Kansas Constitution. The court held (1) sovereign immunity did not protect governmental entities—including the legislative body—from actions for equitable or extraordinary relief; (2) "[s]ervice of process upon the presiding officers of the two houses of the legislature satisfies the purpose of the concept of process and meets the requirements of due process"; and (3) because the action was brought to challenge "the validity of the action taken by the legislature pursuant to the statute," which did "not fall within the sphere of legitimate legislative activity," the immunity under the Speech or Debate Clause did not bar the lawsuit. 236 Kan. at 47-48, 50, 56-58.

But the court dismissed the Legislature anyway, noting it was hesitant "to establish as precedent at this time the validity of an action such as this by the attorney general on behalf of the state directly against the legislature." 236 Kan. at 58. The case proceeded on the merits because the Governor was also a respondent. 236 Kan. at 58 ("Many state

7

actions on relation of the attorney general against the governor of the state have been recognized by this court.").

Our current case is distinguishable because counsel appearing on the Senate's behalf represents that the Senate desires to participate and does not raise any ground advanced in *Kansas House of Representatives* to challenge its status as a respondent. The Senate's response brief even states: "[T]he Senate, as authorized by Senate President Wagle, consents to its inclusion as a party in this case, specifically waiving its privilege under the Speech and Debate [C]lause for purposes of this quo warranto action only." But no authority is cited granting the Senate President this unilateral power, and we are unable to find any.

K.S.A. 2018 Supp. 46-1222a(f) provides:

"The legislative counsel shall represent the legislature, or either house thereof, in any school finance litigation or other cause or matter as directed by the legislative coordinating council. *In cases of quo warranto and mandamus the legislative counsel shall have the same powers and standing in all courts of this state as any county attorney or district attorney has in such attorney's county or in the supreme court and as the attorney general has in any court. When the legislature is in session, either house thereof by its resolution, or both houses by concurrent resolution may authorize the legislative coordinating council to direct the legislative counsel to bring or participate in any cause or action by representing the legislature or either house thereof or the legislative coordinating council in any court of this state* or of the United States." (Emphasis added.)

This statute raises some concerns. The Senate's filings in this case do not reference any resolution authorizing the coordinating council to direct counsel to participate in this litigation. Nor, for that matter, do they contain any indication whether the counsel appearing on the Senate's behalf has been designated as legislative counsel under K.S.A.

8

2018 Supp. 46-1222a(a) and (f). At oral argument, we were advised no such designation has been made.

In its response brief, the Senate merely notes its President authorizes it to participate as a party. But the Kansas Senate Rules (2017-2020) are silent about giving a Senate President power to authorize the Senate's inclusion in a lawsuit. For these reasons it is debatable whether the Senate President's authorization is sufficient for that body to consent to being subject to this litigation.

Just as important, the Senate has not yet exercised any authority asserted to be unlawful by the State; so we are left to ponder how a quo warranto action against the Senate is appropriate. See *City of Wichita*, 303 Kan. at 656. In the end, it seems obvious the nature of this action as to the Senate is not in quo warranto, as the State alleges, because the Senate has not done anything yet. This court does not have constitutional power to issue advisory opinions to the Senate about its confirmation of a nominee under K.S.A. 2018 Supp. 20-3020. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008) (discussing the constitutional prohibition against advisory opinions). "The judicial power granted by Article 3 of the Kansas Constitution does not include the power to give advisory opinions. A Kansas court issuing an advisory opinion would violate the separation of powers doctrine by exceeding its constitutional authority." 285 Kan. at 898.

Finally, this court's ultimate judgment as to the appointing authority of either the Governor or the Chief Justice will necessarily operate to guide all public officials in the performance of their respective duties, even though our judgment will not directly affect the Senate's authority to act.

For these reasons, we dismiss the Senate from this action.

9

*The statutory authority to appoint Court of Appeals judges*

The practical question in dispute between the State and Governor is what happens next with respect to the Court of Appeals vacancy. The answer turns on the legal effect of what has occurred to date. That determination requires interpretation of K.S.A. 2018 Supp. 20-3020. Our standard of review on this is well known.

"Statutory interpretation presents a question of law subject to de novo review. *Central Kansas Medical Center v. Hatesohl*, 308 Kan. 992, 1002, 425 P.3d 1253 (2018). When interpreting a statute, a court first attempts to discern legislative intent through the statutory language, giving common words their ordinary meanings. *Whaley v. Sharp*, 301 Kan. 192, 196, 343 P.3d 63 (2014). When the language is plain and unambiguous, the court must give effect to its express language, rather than determine what the law should be. The court will not speculate about legislative intent and will not read the statute to add something not readily found in it. *Graham v. Dokter Trucking Group*, 284 Kan. 547, Syl. ¶ 3, 161 P.3d 695 (2007). It is only when the statute's language is unclear or ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain its meaning. *Whaley*, 301 Kan. at 196." *Nauheim*, 309 Kan. at 149-50.

Under K.S.A. 2018 Supp. 20-3020:

"(a)(1) On and after July 1, 2013, any vacancy occurring in the office of any judge of the court of appeals and any position to be open on the court of appeals as a result of enlargement of such court, or the retirement or failure of an incumbent to file such judge's declaration of candidacy to be retained in office as hereinafter required, or failure of a judge to be elected to be retained in office, shall be filled by appointment by the governor, with the consent of the senate, of a person possessing the qualifications of office.

(2) Whenever a vacancy occurs, will occur or position opens on the court of appeals, the clerk of the supreme court shall promptly give notice to the governor.

(3) If the governor is making an appointment to the court of appeals, the governor shall make each applicant's name and city of residence available to the public whenever the governor stops accepting applications for such appointment, but not less than 10 days prior to making such appointment.

(4) In event of the failure of the governor to make the appointment within 60 days from the date such vacancy occurred or position became open, the chief justice of the supreme court, with the consent of the senate, shall make the appointment of a person possessing the qualifications of office.

(5) If the chief justice of the supreme court is making an appointment to the court of appeals, the chief justice shall make each applicant's name and city of residence available to the public whenever the chief justice stops accepting applications for such appointment, but not less than 10 days prior to making such appointment.

(6) Whenever a vacancy in the office of judge of the court of appeals exists at the time the appointment to fill such vacancy is made pursuant to this section, the appointment shall be effective at the time it is made, but where an appointment is made pursuant to this section to fill a vacancy which will occur at a future date, such appointment shall not take effect until such date.

"(b) No person appointed pursuant to subsection (a) shall assume the office of judge of the court of appeals until the senate, by an affirmative vote of the majority of all members of the senate then elected or appointed and qualified, consents to such appointment. The senate shall vote to consent to any such appointment not later than 60 days after such appointment is received by the senate. If the senate is not in session and will not be in session within the 60-day time limitation, the senate shall vote to consent to any such appointment not later than 20 days after the senate begins its next session. In the event a majority of the senate does not vote to consent to the appointment, the governor, within 60 days after the senate vote on the previous appointee, shall appoint another

11

person possessing the qualifications of office and such subsequent appointment shall be considered by the senate in the same procedure as provided in this section. The same appointment and consent procedure shall be followed until a valid appointment has been made. No person who has been previously appointed but did not receive the consent of the senate shall be appointed again for the same vacancy. If the senate fails to vote on an appointment within the time limitation imposed by this subsection, the senate shall be deemed to have given consent to such appointment.

"(c) Persons who are appointed as judges of the court of appeals pursuant to K.S.A. 20-3005, prior to its repeal, and this section, shall commence the duties of office upon appointment and consent, and each judge shall have all the rights, privileges, powers and duties prescribed by law for the office of judge of the court of appeals.

"(d) Judges of the court of appeals shall possess the qualifications prescribed by law for justices of the supreme court."

Under this statute, the first step in filling a Court of Appeals vacancy is creation of the vacancy itself. K.S.A. 2018 Supp. 20-3020(a)(1). The second step is the clerk of the appellate courts promptly notifying the Governor. K.S.A. 2018 Supp. 20-3020(a)(2). If, as here, the Governor seeks to make an appointment, the third step requires the Governor to publish the applicants' names and their residential cities when applications are no longer being accepted, and no later than 10 days before making the appointment. K.S.A. 2018 Supp. 20-3020(a)(3). These three steps are not in controversy.

The fourth step allows the Governor to make the appointment within 60 days from the date the vacancy occurred. K.S.A. 2018 Supp. 20-3020(a)(4). If the Governor does not make the appointment within 60 days, the Chief Justice of the Supreme Court must make it. K.S.A. 2018 Supp. 20-3020(a)(4).

12

The fifth and final step concerns the Senate's consent, which can occur either by a majority vote or by acquiescence if the Senate fails to timely vote on the appointment. The Senate has 60 days after receiving the appointment to take that vote if it is in session or will be in session during the 60-day period. If the Senate is not and will not be in session within the 60-day period, it has 20 days after beginning its next session to vote. K.S.A. 2018 Supp. 20-3020(b).

*Did the Governor make an appointment within the 60-day window?*

Our first issue arises at step four: Did the Governor make an appointment within the 60-day window? There is no factual dispute about this. The Governor announced her appointment on March 15—the 60th day. It is also undisputed the Governor's appointments coordinator that same day hand-delivered documents signed by the Governor indicating the nature of Judge Jack's appointment and supplying an information packet about him to the Senate Majority Leader's office.

Article II, section 18 of the Kansas Constitution states: "The legislature may provide for the election or appointment of all officers and the filling of all vacancies not otherwise provided for in" the Kansas Constitution. K.S.A. 2018 Supp. 20-3020 outlines general procedures for filling a Court of Appeals vacancy, but it does not specify any particular acts required to make a valid appointment.

In Kansas, it is the Governor's duty when making a Senate-confirmable appointment to "transmit such appointments to the Senate for its action thereon." See *State, ex rel., v. Matassarin*, 114 Kan. 244, Syl. ¶ 3, 217 P. 930 (1923). In our current case, the uncontroverted public announcement by the Governor and written declaration from the appointments coordinator describing the document delivery suffices to establish that an appointment was made and received by the Senate.

13

*Can the Governor withdraw an appointment once made under K.S.A. 2018 Supp. 20-3020?*

The second issue arises between steps four and five: Did the Governor validly withdraw Judge Jack's appointment? Although the parties unanimously assert this was validly done, their claim suffers from some obvious factual and legal problems.

K.S.A. 2018 Supp. 20-3020(a)(6) provides that an appointment to a vacant Court of Appeals seat is "effective at the time it is made." And the statute is silent about whether the Governor may later withdraw that appointment, so to fill this statutory void the parties contend the Governor's authority to withdraw a Court of Appeals appointment must come from a different statute, i.e., K.S.A. 75-4315b. It provides:

"(a) All appointments of public officers which are subject to confirmation by the senate shall be received, considered and acted upon in the manner provided by rules of the senate. Appointments shall be confirmed by the senate only by an affirmative vote of a majority of the senate.

"(b) If a majority of the senate votes on the question of confirmation of an appointment to an office and the appointment is not confirmed, the office shall become vacant at that time.

"(c) *An appointing authority may withdraw an appointment from consideration by the senate at any time before confirmation if:*

*(1) The appointing authority withdrawing the appointment is the same person, or a body having the same members, as the appointing authority that made the appointment; or*

14

*(2) the person or body withdrawing the appointment is a successor to the appointing authority that made the appointment and the appointment was made to fill a vacancy occurring after the person or body was elected to succeed the appointing authority.*

"(d) If a majority of the senate votes on the question of confirmation of an appointment to an office and the appointment is not confirmed, the appointing authority which made the appointment shall not subsequently appoint to the same office the person who failed to be confirmed.

"(e) If an appointment to a public office is subject to confirmation by the senate, any appointment to fill a vacancy in an unexpired term of that office shall also be subject to confirmation by the senate.

"(f) As used in this section 'majority of the senate' means a majority of all members of the senate then elected (or appointed) and qualified." (Emphasis added.)

The parties argue this statute—in particular, subsection (c)—applies because it purports to address "[a]ll appointments of public officers which are subject to [Senate] confirmation." K.S.A. 75-4315b(a). In their view, this accurately describes the office of a judge of the Court of Appeals. But there are several persuasive reasons why this is not as clear-cut as the parties contend, and any one of these is enough to reject the parties' arguments on this point.

The factual difficulty arises because it plainly appears Judge Jack—not the Governor—withdrew his name from consideration. Judge Jack's March 18 letter to Governor Kelly states, "At your request, please convey to the Senate *that I hereby withdraw* from consideration for the Court of Appeals vacancy." (Emphasis added.) And the Governor's March 19 letter to the Senate Majority Leader similarly states, "At my request, *Judge Jeffry Jack has withdrawn from consideration for the Court of Appeals*

15

*vacancy*. I will forward a new nominee for the Senate's consideration within sixty days." (Emphasis added.)

The legal reasons are more tangled. First, Kansas "[c]ase law spells out the rule that the more specific statute governs when two statutes are in conflict. 'A specific statute controls over a general statute. [Citation omitted.] Likewise, a specific provision within a statute controls over a more general provision within the statute.' [Citation omitted.]" *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1215, 221 P.3d 580 (2009). K.S.A. 2018 Supp. 20-3020(b) is more specific than K.S.A. 75-4315b.

Also, K.S.A. 75-4315b(a) as a whole overlaps—and in key areas contradicts—the special procedures established in K.S.A. 2018 Supp. 20-3020(b). Under K.S.A. 75-4315b(a), an appointment shall be "received, considered and acted upon in the manner provided by rules of the senate" and "[a]ppointments shall be confirmed . . . only by an affirmative vote of a majority of the senate." The applicable Senate rule provides the Senate may vote "at any time after the nomination or appointment is returned to the Senate" by the appropriate committee, and "[a]ppointments shall be confirmed . . . only by an affirmative vote . . . ." Kansas Senate Rule 55. But K.S.A. 2018 Supp. 20-3020(b) establishes different rules regarding the consent process. It imposes a strict 60-day deadline for the Senate vote. It also conflicts with K.S.A. 75-4315b because the requirement for an affirmative vote can be dispensed with if the Senate fails to vote within the time limit, which is deemed to be consent.

The statutes also do not qualify as *in pari materia*; so they need not be construed together as the parties contend. "'Statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together.'" *Flowers, Administratrix v. Marshall, Administrator*, 208 Kan. 900, 905, 494 P.2d 1184 (1972). A

16

close reading of the whole of Kansas statutory law on the appointment of Senate-confirmable state officers shows that Court of Appeals appointments under K.S.A. 2018 Supp. 20-3020 are not meant to be among "appointments of public officers which are subject to confirmation by the senate" addressed in K.S.A. 75-4315b.

The Kansas Legislator Briefing Book compiles a list of all appointments subject to Senate confirmation. See Kansas Legislator Briefing Book, 2017, sec. H-8. It includes 55 positions, some of which are made up of multiple offices. See Briefing Book, sec. H-8 (listing, e.g., Court of Appeals Judge [14 positions] and Board of Tax Appeals member [three positions] as single entries). The statute directing the appointment for the first position on the list, Adjutant General, provides, "The governor shall appoint, subject to confirmation by the senate *as provided in K.S.A. 75-4315b*, one adjutant general . . . ." (Emphasis added.) K.S.A. 48-203. And with the sole exception of K.S.A. 2018 Supp. 20-3020, similar language specifically referencing K.S.A. 75-4315b appears in every other statute relating to a Senate-confirmable position. See K.S.A. 12-2514 (Mo-Kan Metropolitan Development District and Agency Compact Commissioners); K.S.A. 12-2524 (Kansas City Area Transportation District and Authority Compact Commissioners); K.S.A. 2018 Supp. 17-2233 (Credit Union Administrator); K.S.A. 22-4519 (State Board of Indigents' Defense Services); K.S.A. 2018 Supp. 32-801 (Wildlife, Parks, and Tourism Secretary); K.S.A. 2018 Supp. 44-709 (Employment Security Board of Review); K.S.A. 44-1003 (Human Rights Commission); K.S.A. 2018 Supp. 48-208 (Kansas National Guard General Officers); K.S.A. 65-2878 (Board of Healing Arts Executive Director); K.S.A. 65-34a02 (Central Interstate Low-Level Radioactive Waste Commission); K.S.A. 73-1208e (Commission on Veterans Affairs Director); K.S.A. 74-560 (Agriculture Secretary); K.S.A. 74-601 (Corporation Commission); K.S.A. 74-2113 (Highway Patrol Superintendent); K.S.A. 74-2433 (Board of Tax Appeals Members and Chief Hearing Officer); K.S.A. 74-2613 (Water Office Director); K.S.A. 74-2622 (Water Authority Chairperson); K.S.A. 74-3004 (Banking Board); K.S.A. 74-3202a (State Board of

Regents); K.S.A. 74-4905 (Public Employees Retirement Board of Trustees); K.S.A. 74-5002a (Commerce Secretary); K.S.A 74-5073 (Export Loan Guarantee Review Committee); K.S.A. 74-7303 (Crime Victims Compensation Board); K.S.A. 74-8703 (Lottery Executive Director); K.S.A. 74-8709 (Lottery Commission); K.S.A. 74-8803 (Racing and Gaming Commission); K.S.A. 74-8805 (Executive Director of Racing and Gaming Commission); K.S.A. 74-8903 (Kansas Development Finance Authority Board of Directors); K.S.A. 74-9804 (Gaming Agency Executive Director); K.S.A. 74-99b04 (Bioscience Authority); K.S.A. 2018 Supp. 75-711 (Kansas Bureau of Investigation Director); K.S.A. 2018 Supp. 75-1304 (Bank Commissioner); K.S.A. 2018 Supp. 75-1510 (Fire Marshal); K.S.A. 2018 Supp. 75-2535 (State Librarian); K.S.A. 2018 Supp. 75-2701 (Historical Society Executive Director); K.S.A. 75-2929a (Civil Service Board); K.S.A. 2018 Supp. 75-3702a (Administration Secretary); K.S.A. 75-4221a (Pooled Money Investment Board); K.S.A. 2018 Supp. 75-4323 (Public Employee Relations Board); K.S.A. 2018 Supp. 75-5001 (Transportation Secretary); K.S.A. 2018 Supp. 75-5101 (Revenue Secretary); K.S.A. 2018 Supp. 75-5105 (Property Valuation Director); K.S.A. 2018 Supp. 75-5117 (Alcoholic Beverage Control Director); K.S.A. 2018 Supp. 75-5203 (Corrections Secretary); K.S.A. 2018 Supp. 75-5301 (Secretary for Children and Families); K.S.A. 2018 Supp. 75-5601 (Health and Environment Secretary); K.S.A. 2018 Supp. 75-5701 (Labor Secretary); K.S.A. 2018 Supp. 75-5903 (Aging and Disability Services Secretary); K.S.A. 2018 Supp. 75-6301 (Securities Commissioner); K.S.A. 2018 Supp. 75-7304 (Long-Term Care Ombudsman); K.S.A. 2018 Supp. 75-7427 (Inspector General); K.S.A. 2018 Supp. 76-3304 (University of Kansas Hospital Authority Board of Directors); see also K.S.A. 2015 Supp. 74-99d03 (Electric Transmission Authority, repealed effective May 19, 2016). In other words, the statutes providing for Senate confirmation of all these positions expressly allow for withdrawal under K.S.A. 75-4315b. A Court of Appeals appointment is the obvious outlier.

The Senate points to its reliance on its rules in confirming past Court of Appeals appointees as evidence that K.S.A. 75-4315b should supplement K.S.A. 2018 Supp. 20-3020 in the circumstance before us. But the Senate cites no authority to demonstrate how the manner in which it has conducted previous confirmation proceedings has any bearing on this court's interpretation of either statute. This argument is unpersuasive.

We further note there are a handful of Kansas cases predating K.S.A. 75-4315b dealing with attempts to withdraw appointments. In *Barrett v. Duff*, 114 Kan. 220, 217 P. 918 (1923), the court held the incoming Governor could not withdraw the outgoing Governor's appointments. There, the outgoing Governor's appointees assumed their duties upon appointment. And because the offices were filled, when the incoming Governor tried to revoke those appointments, the court held, the Governor's power over the appointments was already exhausted and the attempted revocations were ineffective. *Barrett*, 114 Kan. at 232-33; see *Matassarin*, 114 Kan. 244, Syl. ¶¶ 1-2 (appointment to board of health entitled appointee to hold office until end of appointed term or appointment's rejection by Senate; attempted revocation invalid because office not vacant).

In *Leek v. Theis*, 217 Kan. 784, 539 P.2d 304 (1975), Governor Docking appointed Franklin Theis to the state Adult Authority. Before the Senate voted, his successor, Governor Bennett, recommended Theis' appointment not be confirmed. The Senate acceded to Governor Bennett's request and voted not to confirm Theis. Following that vote, Governor Bennett submitted a new appointee, whom the Senate confirmed. The court held that upon the Senate's refusal to confirm Theis the office became vacant and Governor Bennett could make the new appointment. 217 Kan. at 792, 810.

These cases follow the general rule that when "the nomination must be confirmed before the officer can take the office or exercise any of its functions, the power of

19

removal is not involved and nominations may be changed at the will of the executive until title to the office is vested." *McChesney v. Sampson*, 232 Ky. 395, 23 S.W.2d 584, 587 (1930); see *Burke v. Schmidt*, 86 S.D. 71, 76-77, 191 N.W.2d 281 (1971) ("It is sometimes claimed, as defendants here claim, that if the action of the Governor is deemed an 'appointment' the Governor may not withdraw it, but if it is a 'nomination' the Governor may withdraw it. We do not believe the nomenclature used ought to be that test, but rather whether the action of the executive is final and complete and places the appointee in office without further action.").

But K.S.A. 2018 Supp. 20-3020 does not adhere to the general rule regarding withdrawal of a previously made appointment. The *Barrett* court's last-act rule hinged on the court's observation that "[n]o further right to exercise the executive function of appointment . . . exists until there is again the happening of [a] contingency specified by law." *Barrett*, 114 Kan. at 233-34. Under K.S.A. 2018 Supp. 20-3020(a)(4), after 60 days from the vacancy have passed, the Governor lacks an express right to exercise any subsequent appointment power until the happening of a contingency, i.e., the Senate voting not to confirm the previous appointment under section (b). This expiration of gubernatorial authority is, with respect to the Governor's withdrawal power, analogous to an office not being vacant in the first place. And unless that contingency occurs, the Governor is powerless to make a substitute appointment.

K.S.A. 2018 Supp. 20-3020's silence on the appointing authority's ability to withdraw an appointment once it is made is, in addition, an indicator the Legislature did not intend to confer such power. As plainly shown above, the Legislature has demonstrated in K.S.A. 75-4315b that it knows how to confer the power to withdraw. It simply did not do so for appointments to the Court of Appeals.

20

But that was not always the case. The former nominating commission statutes for the Court of Appeals replaced by K.S.A. 2018 Supp. 20-3020 are even more on point with respect to the Legislature's intent. The former statutes expressly provided procedures for addressing a nominee's withdrawal before the last act required to install the nominee in the office, which under those statutes was the Governor's appointment. See K.S.A. 20-3008 (repealed effective July 1, 2013). And they contemplated both the nominating commission's withdrawal of a nominee for cause and a nominee's self-withdrawal. See K.S.A. 20-3008. Today, K.S.A. 2018 Supp. 20-3020 places the Governor in the same position as the nominating commission, requiring an additional act to "complete" the appointment and install the appointee into office:  Senate confirmation. Yet the statute does not contain similar language contemplating the appointee's withdrawal before the Senate vote by either the Governor or the appointee.

Under these circumstances and authorities, the failure to address withdrawal in K.S.A. 2018 Supp. 20-3020 indicates the Legislature's intent that this particular appointment, once made, is irrevocable. See *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 974, 218 P.3d 400 (2009) ("[T]he legislature has demonstrated that it knows how to preempt with the [Kansas Corporation Commission]. Its failure to do so in our scenario strongly suggests it did not so intend.").

Further supporting this reasoning, we note the Legislature in K.S.A. 2018 Supp. 20-3020(a)(6) chose to retain language from the nominating commission statutes providing an appointment is "effective at the time it is made" when the office is vacant. See K.S.A. 20-3009(b) (repealed effective July 1, 2013). This language further cuts against reading a withdrawal power into the statute.

21

In *Tucker v. Watkins*, 737 So. 2d 443, 444 (Ala. 1999), the Alabama Supreme Court examined similar language in a statute governing appointments to a state university's board of trustees. The court noted,

> "The adjective 'effective,' as it is used in the phrase '[a]ll appointments shall be effective until,' is defined as '[o]perative; in effect,' *The American Heritage Dictionary of the English Language* 416 (1969), or '[a]ctually in operation or in force, functioning.' *The Random House Dictionary of the English Language* 454 (1973)." *Tucker*, 737 So. 2d at 445.

The Governor, of course, contends she has the right to make a "follow-up" appointment after withdrawing the previous one, arguing it would be "unreasonable and absurd to require a governor to subject the government and the Senate to a destructive, wasteful confirmation process." This is basically a policy argument favoring why she should have that power. But the statute's plain language trumps the preferred policies advocated by the parties. *State v. Spencer Gifts*, 304 Kan. 755, 761, 374 P.3d 680 (2016). And history demonstrates the *non*confirmation process when the Governor withdraws *support* for a previously made appointment is workable. See *Leek*, 217 Kan. at 788-92. For these reasons, we need not address the Senate's legal fiction argument that the Governor somehow failed to make the appointment within her initial 60-day window by withdrawing the appointment, i.e., retroactively nullifying an act after it became effective.

Finally, "we must construe statutes to avoid unreasonable or absurd results . . . ." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). Having rejected the proposed statutory interpretations advanced by both the Governor and the Senate, we observe that if the Legislature intended K.S.A. 75-4315b to apply in these circumstances, we would end up at the absurd result proposed by the

22

Attorney General, i.e., under these circumstances there is no appointing authority and the vacancy on the Court of Appeals must remain in perpetuity or until there is a legislative fix. Because we presume the Legislature did not intend to reach such absurd results, we are further persuaded it did not, in fact, intend K.S.A. 75-4315b to apply to Court of Appeals vacancies.

And once the possibility of a withdrawn appointment is out of the picture, K.S.A. 2018 Supp. 20-3020 becomes a seamless whole. By avoiding the result proposed by the Attorney General, our interpretation of K.S.A. 2018 Supp. 20-3020 actually furthers the Legislature's policy goal of protecting the process of filling appellate court vacancies from gridlock. The K.S.A. 2018 Supp. 20-3020 framework avoids that by providing strict deadlines to act and alternative methods for appointments if one actor in the process fails to act. The policy choice of not having the possibility of a withdrawn appointment reasonably protects the process from the potential for unnecessary delay and political gamesmanship.

This court ordinarily will not read a statute so as to add that which is not readily found in the language. See *Nauheim*, 309 Kan. at 150; *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 464, 228 P.3d 403 (2010); *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001). We will not do so in this case, even if the policy reasons are seductive.

We hold K.S.A. 75-4315b could not empower the Governor to withdraw Judge Jack's appointment. Under K.S.A. 2018 Supp. 20-3020 as written, we conclude the Governor is powerless to withdraw a Court of Appeals appointment once it is made.

*Does Judge Jack's letter have any legal effect?*

Under the statute, an appointment can fail in only one way: if the Senate holds a "vote to consent . . . not later than 60 days after such appointment is received" and "a majority of the senate does not vote to consent to the appointment . . . ." K.S.A. 2018 Supp. 20-3020(b). On its face, this contemplates an actual vote because the Senate is deemed to have consented if it "fails to vote on an appointment" within the time limit. K.S.A. 2018 Supp. 20-3020(b). And in determining what happens after the Senate "does not vote to consent," the statute provides, "[T]he governor, within 60 days after *the senate vote* on the previous appointee, shall appoint another person . . . ." (Emphasis added.) K.S.A. 2018 Supp. 20-3020(b).

The statute contemplates that the Governor make a new appointment only "after the senate vote." The most natural reading of the statute is that every subsequent appointment for a vacancy requires a negative vote on the previous appointee. And, as with the Governor's power to withdraw, the Legislature's omission of a provision for appointee withdrawal is significant because it chose not to provide for it in K.S.A. 2018 Supp. 20-3020, even though it contemplated that scenario in the nominating-commission era statutes. See K.S.A. 20-3008 ("If a nominee dies or requests in writing that his or her name be withdrawn, the commission shall nominate another person to replace him or her.").

Because nothing in the statute envisions the appointee relieving the Senate of its power to vote or its option to acquiesce, Judge Jack's withdrawal serves only the practical purpose of clearing the path for a speedy and uncontentious vote *not* to confirm him. See *Leek*, 217 Kan. at 788 (noting after Governor requested that appointee not be confirmed, the appointment was set as special order of business two days later without a committee referral and rejected on a "'bulk roll call'" vote).

24

*Conclusion*

We hold the Governor appointed Judge Jack to fill the Court of Appeals vacancy created by Judge McAnany's retirement, and the Senate has received that appointment. This effectively began the statutory 60-day Senate confirmation process under K.S.A. 2018 Supp. 20-3020(b). Under these facts, neither the Governor nor the appointee possessed statutory authority to withdraw the appointment and stop that process. Accordingly, the Governor's new appointment is ineffective because there may be only one appointee at a time. Because of this, the second appointment is treated as a matter of law as if it never happened.

NUSS, C.J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 121,061 vice Chief Justice Nuss under the authority vested in the Supreme Court by K.S.A. 20-2616.